[L.A. No. 31447. May 20, 1982.]

SARAH ARRIETA et al., Plaintiffs and Respondents, v.
JOHN F. MAHON, JR., as Marshal, etc., Defendant and Appellant.

382

**COUNSEL**

John H. Larson, County Counsel, and Frederick R. Bennett, Deputy County Counsel, for Defendant and Appellant.

Gary L. Blasi and Barbara A. Blanco for Plaintiffs and Respondents.

Dicker & Dicker, Robert L. Dicker and Edward L. Falman as Amici Curiae.

**OPINION**

**KAUS, J.—**

I

At issue in this case is the former policy of the Los Angeles County Marshal, when enforcing a writ of execution after an unlawful detainer judgment, to evict all occupants of the premises, whether or not they were named in the writ. The trial court ruled that without a further or-

der of the court, the eviction of any adults not named in the writ who claim a right to possession of the disputed premises that arose before the unlawful detainer action was commenced, violated the rights of such individuals to procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 7, subdivision (a) of the California Constitution.[1] The court also determined that the marshal must include a statement in the notice to vacate which normally accompanies the writ of execution[2] advising those who claim a right to possession accruing before the commencement of the unlawful detainer action, or who claim to have been in possession of the premises on the date of the filing of the action and who are not named in the writ, to contact the marshal's office. Eviction of such claimants is barred pending "further order of court."

## II

On Wednesday, March 21, 1979, the Los Angeles County Marshal came to the apartment of Sarah Arrieta, one of the plaintiffs, and left a notice directing one Ernesto Falcon to vacate the apartment by March 26, 1979, or be forcibly evicted. Falcon had lived with Arrieta, her children and sister from about May 1977 until November 1978, when he had moved to Mexico. Although Falcon had assisted Arrieta in finding the apartment and had paid the first month's rent and key deposit, Arrieta made all later rental payments. These payments were made either directly to the landlord or to his resident manager. Neither Arrieta nor members of her family were served with any papers relating to the unlawful detainer action against Falcon. Until the writ of execution and notice to vacate were posted on her door, Arrieta knew nothing of the unlawful detainer proceedings.[3]

---

[1] The trial court also found that the marshal's practice violated the rights of such persons to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution. Since we resolve the case on due process grounds, search and seizure issues are not discussed.

[2] Although Code of Civil Procedure section 1174 refers to the "writ of restitution" as the vehicle for restoration of premises after a judgment in unlawful detainer, such writ is merely a type of writ of execution, as described and defined elsewhere. (Code Civ. Proc., §§ 682, 684.) For clarity we shall use the term "writ of execution" throughout this opinion. The trial court's judgment refers to the document as a "writ of possession"—a process which serves a different function. (See Code Civ. Proc., § 1166a.) It is, however, quite clear what the court meant and the judgment is understood and interpreted as affecting writs of execution.

[3] The suit against Falcon was based on nonpayment of rent. Arrieta alleges that had she been served with a summons in this case, she would have had several valid defenses

Under the policy of the Los Angeles County Marshal's office in effect at the time, marshals were instructed that, "When enforcing a Writ of Execution (Possession of Real Property) against a tenant, the enforcing officer should evict the tenant and *all other occupants of the premises.*" (Italics added.) Marshals were also instructed that, when enforcing a writ against a husband or wife, the entire family should be removed. It is conceded that under this policy, Arrieta would have been evicted from the apartment even though she had no notice of the action or opportunity to contest it.

On March 28, 1979, Arrieta's attorneys filed motions to stay execution and recall or quash the writ of execution on the grounds that she had had no notice of the proceeding. These motions were denied on the ground, inter alia, that Arrieta was not a party to the unlawful detainer proceeding.

A day later, Arrieta brought this action for declaratory and injunctive relief, alleging that the marshal's practice of evicting unnamed adults on the premises violated her rights to procedural due process and to be free from unreasonable searches and seizures. Arrieta also brought a taxpayer's suit (Code Civ. Proc., § 526a) to enjoin the marshal from expending public funds to carry out his policy of evicting all occupants. After the superior court issued an order directing the landlord and the marshal to show cause why they should not be enjoined from evicting Arrieta, the landlord instructed the marshal not to evict her. The court also instructed the marshal to show cause why, in other cases, he should not be restrained from evicting any adult in possession not named in the writ. With Arrieta's personal action mooted, the suit proceeded as a taxpayer's action against the marshal.[4]

---

including: no hot water; no heater; infestation with vermin, rats, cockroaches and spiders; broken windows; leaking pipes, and other conditions rendering the apartment uninhabitable. However, since Falcon did not appear, none of these issues was raised and a default judgment was entered.

[4]Arrieta's experience is only illustrative of the deprivations that may arise under the policy challenged in this action. The record reveals a number of other examples of situations in which the problems with the marshal's former policy are manifest. For example: (1) a tenant with an independent right to possession who is named in the lease may be evicted in an action against a cotenant; (2) a subtenant, even when approved by the landlord, may be evicted pursuant to an unlawful detainer action filed against the tenant; or (3) a tenant who has appeared in an unlawful detainer proceeding may be evicted because a cotenant or family member did not appear or prevail in a similar proceeding.

Indicating that he had "no interest in this matter beyond his duty to perform his ministerial duty as required by law," the marshal stipulated to the issuance of a preliminary injunction barring the removal, without further order of the court, of "any person other than the defendant named in the writ, *the family of said defendant*," or any other person claiming a right to possession that did not accrue before the unlawful detainer action was filed.

The trial court eventually granted declaratory relief barring the marshal from removing *any* adult person not named in the writ who entered the premises before the commencement of the unlawful detainer proceedings and claimed a right to possession "in response to inquiry by the marshal or his deputy." To claim a right to possession of the premises, the court noted, "it is sufficient . . . to state in response to inquiry by the marshal or his deputies that such person was in possession of the subject property on the date of the filing of the unlawful detainer proceeding in which the writ has issued." The court further directed the marshal to include in the notice to vacate a statement which reads: "If you claim a right to possession of the premises accruing prior to the commencement of the Unlawful Detainer action, or claim to have been in possession of the premises on the date of the filing of the Unlawful Detainer action and are not named in the attached writ, contact the marshal's office set forth on this Notice." The decree thus goes further than the stipulated preliminary injunction, in that it does not permit the marshal to evict an adult solely because he or she is a member of the family of the person named in the writ.

Plaintiffs were awarded $3,270 in attorney's fees.

### III

The question whether this case satisfies the "case or controversy" requirement has been raised. (See Cal. Const., art. III, § 1; art. VI, §§ 10, 11; see also *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910 [83 Cal.Rptr. 670, 464 P.2d 126]; *Hill* v. *Hill* (1947) 79 Cal.App.2d 368 [180 P.2d 378].) The issue arises from the marshal's insistence in the trial court that he has "no interest in this matter beyond his ministerial duty as required by law," and his statement that his sole purpose in appealing was to obtain citable precedent setting out a procedure he can follow when premises are occupied by parties not named in the writ of execution.

Code of Civil Procedure 526a permits a taxpayer "to obtain a judgment, restraining and preventing any illegal expenditure" of public funds. In *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 269 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], we concluded that "if an action meets the requirements of section 526a, it presents a true case or controversy.... [T]he primary purpose of section 526a was to give a large body of citizens standing to challenge governmental actions. If we were to hold that such suits did not present a true case or controversy unless the plaintiff and the defendant each had a special, personal interest in the outcome, we would drastically curtail their usefulness as a check on illegal government activity. Few indeed are the government officers who have a personal interest in the continued validity of their official acts." (See also *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 450 [166 Cal.Rptr. 149, 613 P.2d 210].) We adhere to the rule of *Blair* and *Van Atta* in this case.[5]

## IV

Before reaching the due process issue raised by Arrieta, we consider briefly the legal foundations of the marshal's policies.

The marshal's initial policy, permitting the eviction of all occupants of the dwelling of a judgment debtor, was apparently based on what he now concedes was a misreading of *Fremont* v. *Crippen* (1858) 10 Cal. 211. *Fremont* is cited in the Code Commissioner's note 1 to Code of Civil Procedure section 1174, which states in relevant part: "Restitution. If a sheriff refuses to execute the writ on the ground that the premises are in possession of persons not parties to the suit, this court will, by mandamus, compel him to execute the writ. Fremont v. Crip-

---

[5]Actually, there can be little doubt that a truly adversarial proceeding took place in the trial court. Attorneys for plaintiff allege that before filing this action they had approached the marshal's office many times, attempting to convince the marshal to discontinue the disputed practices, but that the marshal had consistently refused. After the action was filed and plaintiff's attorneys had expended considerable effort in preparing the case, the marshal finally stipulated to certain changes in his policy that, he conceded, would not have been made but for the suit. Even so, the stipulated changes fell far short of those demanded by the plaintiff and ultimately required by the superior court. Specifically, the stipulation permitted the marshal to continue evicting the families of the named judgment debtors—a practice expressly barred by the trial court order. The marshal devoted a considerable portion of his trial court brief to justifying the eviction of such families. The marshal's trial court brief also argued that Arrietta's action should be barred because (1) an appeal from the denial of her motion to quash the writ of execution against Falcon was an adequate remedy at law and (2) the taxpayer's action was an improper method of collaterally attacking a judgment that bound her as well as Falcon.

pen, 10 Cal. 211." Despite the broad language of the Code Commissioners, *Fremont* deals only with the *entry* of nonparties *after* judgment. The holding is based upon the following rationale: "'If it were once permitted for a defendant, against whom there was a judgment on a forcible entry and detainer, to put in a third person, or for a third person to enter afterwards, with a view of again putting a plaintiff's title to the rack, such third person might again, in his turn, after judgment against him, put another in possession, or permit him to enter; so that there might be prosecutions without end, and the object of regaining possession by the plaintiff would be as far off as at the commencement of his first remedy to regain his possession, to the utter subversion of all justice.' [Citation omitted]." (*Fremont v. Crippen, supra,* 10 Cal. at p. 214.) *Fremont* merely states the rule that was incorporated in Code of Civil Procedure section 1164 in 1885—that: "All persons who enter the premises under the tenant, *after the commencement of the suit,* shall be bound by the judgment, the same as if he or they had been made [a] party to the action." (Italics added.) The trial court's ruling is consistent with *Fremont* and section 1164, since it permits the marshal to evict those who, though not named in the writ of execution, admit to having entered the premises "under the person or persons named in the writ after the commencement of the Unlawful Detainer proceedings. . . ."

As noted, before this case was argued in the trial court, the marshal revised his policy to conform with the preliminary injunction stipulated to by the parties. Under the revised policy, only the named judgment debtor, those whose claim of possession arose after the unlawful detainer proceeding commenced, and *the family* of the judgment debtor could be evicted. The language permitting the eviction of family members was based on Code Commissioner's note 2, accompanying Code of Civil Procedure section 1164, stating: "Effect of judgment: A judgment in an action of forcible entry and detainer against the husband, is sufficient authority to put out any member of his family. Saunders v. Webber [(1870) 39 Cal. 287, 290]."

The law and reasoning on which *Saunders* was based are quite clearly from an era long gone. In *Saunders,* an action to enjoin the execution of a judgment of forcible entry and detainer, the wife of the individual named in the writ brought suit claiming that she, rather than her husband, possessed the disputed property and that she was not made a party to the litigation. The lower court enjoined the execution of the writ of restitution against the wife. This court reversed, arguing that the

wife's claim to the property was entirely subservient to the husband's: "Even the Sole Trader Act does not make the wife the head of the family, nor in any respect change the marital relation further, at least, than her business as sole trader. It matters not whether the husband made the forcible entry, or the wife with her husband; the trespass was his, and a judgment against him of this character is sufficient authority to put out any member of his family." (*Id.*, at p. 291.) We disposed of the social philosophy on which this reasoning is based in *People v. Pierce* (1964) 61 Cal.2d 879, 880 [40 Cal.Rptr. 845, 395 P.2d 893]. (See also, Civ. Code, § 5127.)[6]

## V

The right to a pre-eviction hearing is firmly established in unlawful detainer actions. (See *Mendoza v. Small Claims Court* (1958) 49 Cal.2d 668, 672-673 [321 P.2d 9].) Notice "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" is, of course, an essential element of the right to a hearing. (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Those who are evicted from their homes pursuant to a writ issued against another receive no notice or hearing whatever—unless by sheer good fortune they discover the pendency of the action and are able to block it through an extraordinary remedy. Even those who know of the action may not know that their own right to possession is in jeopardy if they are not named in the writ or accompanying papers. In either case, their eviction is manifestly contrary to the strictures of the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution.[7]

---

[6]Of course, spouses are not the only family members who might have been affected by the marshal's revised policy. Which other adults could have been evicted depends on one's definition of "family." (Cf. *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].)

[7]Although there are apparently no California cases dealing directly with the failure to name subtenants, cotenants, assignees or adult family members in the writ of execution and notice to vacate, this court applied a due process analysis in an early ejectment case dealing with this issue. In *Wattson v. Dowling* (1864) 26 Cal. 125, the court considered the claim of one Peltret for restoration of his premises. Apparently Peltret was ejected as a result of an action brought against Dowling, a previous owner of the land who had sold to a third party prior to the filing of the action against him. The property changed hands two more times in a single year, before Peltret obtained it. At the time he obtained his interest, Peltret had notice of the action against Dowling. Nevertheless, the court noted: "When [Peltret] entered he but took possession of his own, and he

As noted, the trial court order requires that the marshal place in the notice to vacate a short message stating: "If you claim a right to possession of the premises accruing prior to the commencement of the Unlawful Detainer action, or claim to have been in possession of the premises on the date of the filing of the Unlawful Detainer action and are not named in the attached writ, contact the marshal's office set forth on this Notice." Once the marshal discovers that a person not named in the writ of execution claims a right to possession accruing before the unlawful detainer proceeding commenced, he may not evict that person without a further order of court. Although the trial court order does not specify the steps to be taken once the marshal has been contacted, the court apparently envisioned the procedure set out in *Huerstal* v. *Muir* (1884) 64 Cal. 450, 451-452 [2 P. 33]. Under that procedure, the marshal, faced with a resisting occupant, must contact the plaintiff and inform him of the claim of the unnamed party. The plaintiff may then return to court and get a postjudgment order requiring the unnamed party to show cause why he should not also be evicted.[8] The inclusion in the notice to vacate of language such as that suggested by the trial court, followed by the above procedure, should satisfy due process requirements by providing individuals unnamed in the writ of execution with notice and an opportunity to be heard.

An extraordinary remedy in the form of a motion to recall or vacate the writ of possession has, on occasion, been used to vindicate the rights of unnamed occupants in unlawful detainer actions. (See *Evans* v. *Superior Court* (1942) 20 Cal.2d 186 [124 P.2d 820]; *Jones* v. *World Life*

---

could not be dispossessed of his property by proceedings to which he was neither party nor privy. However convenient it might be to plaintiffs in ejectments were they allowed to oust all persons from the premises the possession of which they had recovered, who had come in *pendente lite* without collusion with defendants and without their license, but by title derived from other sources, still we cannot, on the ground of such convenience, adjudge that a citizen can be deprived of his property or of the enjoyment of it, without due process of law. [Citation omitted.]" (*Id.*, at p. 128; see also, *Tevis* v. *Ellis* (1864) 25 Cal. 515, 518-519.)

[8]In *Huerstal, supra*, this court explained: "When, therefore, a sheriff is called upon to execute such a writ, if he finds other persons in possession than those named in the writ, who claim that they are rightfully in possession, not in privity with the defendant, and the circumstances are such that a reasonable doubt exists whether the sheriff has a right to turn them out, the sheriff may refuse to execute the writ against them. [Citation.] But the court from which the writ issued may, by virtue of its power over its process, order the sheriff to execute the writ against such persons. And on the hearing of a motion upon notice to them for such an order, the court will act upon the presumption that they entered into possession under the defendant, unless they overcome the presumption by reasonably satisfactory proof by affidavits or evidence of an adverse title to that of the plaintiff in the judgment." (*Id.*, 64 Cal. at pp. 451-452.)

*Research Institute* (1976) 60 Cal.App.3d 836 [131 Cal.Rptr. 674].) This nonstatutory remedy is not an acceptable substitute for a regular process assuring notice and a hearing. As the events which triggered this action prove, an unnamed occupant may not discover the existence of the unlawful detainer proceeding until the marshal appears to put her and her children on the street. Thus, it is quite possible that a tenant will be deprived of possession *before* receiving a hearing. Although, in rare circumstances, a hearing may constitutionally be delayed until after the taking (see, e.g., *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 676-680 [40 L.Ed.2d 452, 464-466, 94 S.Ct. 2080] [seizure of vessel used to smuggle drugs]), the important governmental interest or general public interest necessary to permit such a posttaking hearing is plainly not present in this case. (See *Mendoza* v. *Small Claims Court, supra,* 49 Cal.2d at p. 672.) Further, even if the resisting occupant were to learn of the impending eviction, the code allows only five *calendar* days in which to find an attorney and have the necessary papers prepared and filed.[9] (Code Civ. Proc., § 1174, subd. (d).) These constraints make the motion to recall a remedy too speculative to satisfy due process considerations. (See *Memphis Light, Gas & Water Div.* v. *Craft* (1978) 436 U.S. 1, 20 [56 L.Ed.2d 30, 45-46, 98 S.Ct. 1554] (requiring an administrative proceeding to consider claims of erroneous billing before utilities are terminated).)

Amici[10] contend that aspects of the marshal's former policy were expressly sanctioned by Code of Civil Procedure section 1164 which states, in relevant part: "No person other than the tenant of the premises and subtenant, if there be one, in the actual occupation of the premises when the complaint is filed, need be made parties defendant in the proceeding, nor shall any proceeding abate, nor the plaintiff be non-suited for the nonjoinder of any person who might have been made party defendant, but when it appears that any of the parties served with process, or appearing in the proceeding, are guilty of the offense charged, judgment must be rendered against him...." (Code Civ. Proc., § 1164.) Read out of the context of the remainder of the sentence, the words—"[n]o person other than the tenant ... and subtenant

---

[9]Affidavits filed with the trial court by legal aid attorneys suggest that very few attorneys are aware of this nonstatutory remedy. Even those who are, they point out, are often hard-pressed to prepare the necessary papers in the allotted time period.

[10]An amicus brief was filed by the law firm of Dicker and Dicker. Although the firm does not appear to be representing any particular organization or individual, they note that most of their clients are landlords and land management corporations.

... need be made parties defendant"—lend credence to the argument that an unlawful detainer judgment against one tenant would bind others. However, the remainder of the sentence clearly establishes that the section is only intended as a rule of nonjoinder to permit unlawful detainer actions to go forward in the absence of individuals who, but for the rule, might be considered indispensable parties. Section 1164 does not suggest, nor should it be read to suggest, that the rights of those who are not joined may be determined in their absence. Our reading of the section is supported by the last sentence of the section which identifies, in very specific language, nonparties who *are* to be bound by the judgment: "All persons who enter the premises under the tenant, after the commencement of the suit, shall be bound by the judgment...."

Amici also suggest that notice need only be given to those who have what might be referred to as a facially valid claim to possession which is independent of the claim of the person named in the writ of execution. They argue, for example, that family members not named in the lease, sublessees whose possession is contrary to the lease terms or without landlord's permission, and all others occupying the premises without the landlord's permission need not be given notice and an opportunity for a hearing. This argument confuses the role of the marshal with that of the courts.

The function of the marshal in an unlawful detainer proceeding is very limited—at no point does it include a determination of the merits of the underlying action. Code of Civil Procedure section 262.1 states: "A sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." "In determining the validity of a writ or other process, the officer may limit his inquiries to the writ itself, and if the writ is issued by the proper officer, in due form, and proceeds from a court competent to exercise jurisdiction over the subject matter, to grant the relief granted, and to enforce the writ issued ...." (42 Cal.Jur.3d, Law Enforcement Officers, § 62; see also *Hayward Lumber & Inv. Co. v. Biscailuz* (1957) 47 Cal.2d 716, 722 [306 P.2d 6]; *Norcross v. Nunan* (1882) 61 Cal. 640, 643.) Thus, when the marshal discovers an individual who is not named in the writ in possession of the premises under a claim of right, he is not empowered, nor would he be equipped, to determine whether that person is bound by the previous judgment or had a facially valid claim to possession except to

the extent that the person admits that he is bound or has no claim of right. These determinations are properly the role of the courts.

The procedure set out by the trial court will not destroy the summary nature of the unlawful detainer proceeding. It only aids those *not named* in the writ of execution. A plaintiff can normally avoid this problem by naming all adults on the premises. Further, the procedure does not *bar* eviction of unnamed tenants—it merely requires that the landlord return to court and get a postjudgment order requiring the unnamed tenant to show cause why he should not also be evicted. Since Code of Civil Procedure section 1179a gives precedence to unlawful detainer actions over other civil actions, the procedure should not lead to substantial delays.

## VI

The trial court awarded plaintiffs a total of $3,270 in attorney's fees pursuant to Code of Civil Procedure section 1021.5—$2,520 for litigating the substantive issues and $750 for resisting defendant's motion to tax costs which included attorney's fees. Defendant challenges both awards.

As to the sum awarded in connection with litigating the substantive issues, defendant claims that although the requirements of section 1021.5 were met, the trial court should have reduced or denied attorney's fees based on "the fact that an award against the state would ultimately fall upon the taxpayers; . . . the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved [fn. omitted]; [and] . . . the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; . . ." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 [141 Cal.Rptr. 315, 569 P.2d 1303] [*Serrano III*].)

In *Serrano III*, we noted that these are some of the factors taken into account by the trial court in determining whether to augment or reduce the fee award. Other factors included the novelty and difficulty of the issues and the extent to which the litigation precluded other employment by the attorneys. Regarding all of these factors, we noted that "some militated in favor of augmentation and some in favor of diminution." (*Id.*, at p. 49.) We also observed: "The 'experienced trial judge is the best judge of the value of the professional services rendered in his

court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" The award of attorney's fees in this case was entirely consistent with the language of *Serrano III*.

The marshal also argues that because he "declined the defense of the issues raised and [advised the trial court that] he would comply with any lawful orders of court . . ." denial of attorney's fees was appropriate. (See *Aho* v. *Clark* (9th Cir. 1979) 608 F.2d 365.) As we have shown (see fn. 4, *ante*), the marshal's disinterest in the trial court proceeding was not as complete as now suggested. A number of substantive and procedural issues were clearly in dispute.

Finally, the marshal argues that the award of $750 for resisting his motion to tax costs was inappropriate and unsupported by California case law. The issue of "fees upon fees" is currently before this court in *Serrano* v. *Unruh* (L.A. 31496, hg. granted Nov. 27, 1981). Because in that case the issue is more exhaustively briefed by parties representing a broader spectrum of interests, we deem it wise not to decide it under the narrow circumstances of this case. Therefore, the judgment is reversed as far as it awards the sum of $750 for resisting the motion to tax costs and the trial court is instructed to retain jurisdiction pending our decision in *Serrano* v. *Unruh*.

In all other respects the judgment of the trial court is affirmed. Costs on appeal to respondents.

Bird, C. J., Mosk, J., Richardson, J., Newman, J., and Broussard, J., concurred.