[Civ. No. 24162. Second Dist., Div. Two. May 25, 1960.]

L. M. RICHARD, JR., Plaintiff and Appellant, v. DEGEN AND BRODY, INCORPORATED (a Corporation) et al., Defendants and Appellants.

Baker, Cleveland & Erpelding and John W. Erpelding for Plaintiff and Appellant.

Max Fink, William E. Bartley and Howard L. Thaler for Defendants and Appellants.

ASHBURN, J.—Unlawful detainer action. Plaintiff recovered judgment and defendants appeal; plaintiff also appeals.

Plaintiff acquired the property from Robert Lee Myer through an escrow which was opened on May 8, 1958, and closed on June 30, 1958. The premises were under lease to defendant Degen and Brody, Incorporated, the term having some two years to run. That lease forbade assignment or subleasing by the lessee without written consent of the lessor, and provided that "[a]ny such assignment or subletting without such consent shall be void, and shall, at the option of lessor, terminate this lease." It specified that the premises should be used "for the purpose of conducting therein a flooring and accoustical supply business, and for no other purpose," and said in paragraph 2: "Lessee shall not use, or permit said premises, or any part thereof, to be used, for any purpose or purposes other than the purpose or purposes for which said premises are hereby leased." Paragraph 3 provides: "Lessee shall not make, or suffer to be made, any alterations of the said premises, or any part thereof, without the written consent of lessor first had and obtained. . . ." It was stipulated at the trial that "there has been no written consent to the subletting or to a use different than that provided in the lease, nor is there any written consent to the alteration of the premises by plaintiff." The court found that the lessee, Degen and Brody, Inc., did sublet a portion of the premises to defendant Allied Stores of America without the consent of the lessor Myer, or of

plaintiff, and said "[d]efendants did, without the consent of Plaintiff and against his will and over his objections occupy and now continue to occupy a portion of said premises"; that defendant Degen and Brody, Inc. "caused extensive alterations to portions of the said premises without the *written* consent of Lessor or of plaintiff, and without any consent of Lessor or of Plaintiff"; also that "[d]efendant Allied Stores of America is occupying a portion of the leased premises, is conducting therein a furniture, furnishings, carpeting, draperies, and interior decorating business, all without the consent of Robert Lee Myer, Lessor, and without the consent of plaintiff." The court concluded and adjudged that defendants were guilty of unlawful detainer, that plaintiff be restored to possession, and the lease of Degen and Brody, Inc. terminated and forfeited. Damages were awarded for unlawful detainer in the sum of $1,800 and interest, less a credit of $730; damages for alteration of premises, $390; plaintiff also to recover an attorney fee of $1,200 and costs. Defendants procured a stay of execution during pendency of appeal conditioned upon payment of current rents provided by the lease and the posting of a bond in the sum of $10,000.

## Defendants' Appeal

Defendants argue that the three-day notice to quit which was served on them was insufficient and hence there was no basis for maintaining the action. That notice specified as breaches of the lease, (1) use of the premises for purposes other than those specified in the lease, (2) making of alterations without written or any consent of lessor, and (3) making of sublease without written consent of lessor or any consent. It is in the customary form of a three-day notice to cure the defaults or surrender possession, and advises of an intent to terminate the lease, reenter the premises and file proceedings in unlawful detainer in event of failure of said defendants to cure the specified defaults within the prescribed three-day period.

Defendants argue that a subleasing without consent cannot be cured and hence a three-day notice cannot apply to such a default, citing cases to the effect that an alternative three-day notice is not necessary in such a situation and relying upon the latter portion of subdivision 3 of section 1161, Code of Civil Procedure: "[P]rovided, if the conditions and covenants of the lease, violated by the lessee, can not afterward be performed, then no notice, as last prescribed herein, need be given to said lessee or his subtenant, demanding the

performance of the violated conditions or covenants of the lease." The cited cases are, *Schnittger* v. *Rose*, 139 Cal. 656 [73 P. 449], and *Horton-Howard* v. *Payton*, 44 Cal.App. 108 [186 P. 167].

*Schnittger, supra,* holds (p. 661) that a three-day demand for possession is always necessary before commencement of unlawful detainer but that couching the notice in alternative form would be "an idle and useless ceremony" where the breached covenants could not be performed. "The demand operates both as a notice of the landlord's election to insist on a forfeiture of the lease, and as requiring surrender of possession by the tenant." (P. 661.) "The only advantage which accrues to him from the breach is the right to possession; the only notice the lessee can have that the landlord elects to avail himself of the breach is a demand for that alone which the breach entitles him to—a surrender of the possession of the premises." (Pp. 661-662.) Even if the specified breach is not capable of being cured, a three-day notice to quit is essential; it need not contain the alternative provision about performing or surrendering.

*Horton-Howard* v. *Payton, supra,* 44 Cal.App. 108, at 111 says that "the notice, in such case, need not be in the alternative, but it will be sufficient simply to give three days' notice demanding 'the possession of the property.' Such demand for possession is a statutory prerequisite to any forfeiture of the lease, even though notice of the alternative requirement— performance of the condition or covenant—need not be given." As to the form of the notice, it is further said at page 112: "No particular words are prescribed, and no special form is indispensable. Doubtless any written demand is sufficient if the person to whom it is given, as a person of common understanding, must understand from it that the landlord is absolutely and unconditionally demanding of him possession of the demised premises."

Informing a tenant that he must cure within three days a breach which he knows cannot be cured and that his failure so to do will bring on an unlawful detainer action, has no tendency to confuse or mislead him. It can spell only one thing, the determination of the landlord to take advantage of the default after the three days. We consider the alternative clause of the instant notice to be entirely innocuous. Moreover, that notice specified three defaults, two of which presumably could have been cured in three days, and an alternative provision in the notice was indispensable as to them. The evidence at the trial was sufficient to support the findings that those

breaches existed and were not cured. Hence the judgment is sustainable regardless of any invalidity of the notice concerning the subleasing.

■ Defendants assert that they were denied a jury trial which they had demanded and to which they were entitled. The demand was for jury trial upon all issues. The complaint was in customary form of unlawful detainer and section 1171, Code of Civil Procedure, which refers to unlawful or forcible detainer, says: ''Whenever an issue of fact is presented by the pleadings, it must be tried by a jury, unless such jury be waived as in other cases. The jury shall be formed in the same manner as other trial juries in the court in which the action is pending.''

Defendants' answer, as amended, consisted primarily of denials and allegations that the alleged breaches of the lease were committed in reliance upon oral consent of Myer, plaintiff's predecessor in interest, knowledge of which was brought home to plaintiff,—thus foreshadowing an affirmative defense of estoppel in which the conduct of Myer forms the basis and absence of affirmative action on the part of plaintiff the decisive element. It was stipulated that plaintiff gave no written consent to the subletting or to a use different from that provided in the lease or to alteration of the premises. The court ruled that it would try first the equitable plea of estoppel. Defendants' attorney thereupon agreed that the court might fix damages without the aid of a jury but with the understanding that that should not prejudice defendants' rights upon appeal with respect to remaining issues. The court did proceed in the manner suggested, found against the defense of estoppel, and it then appeared that, aside from damages, there were no factual issues for the jury to decide. As so often happens in such a situation the solution of the equitable issues disposes of the legal issues. ■ ''When an action involves both legal and equitable issues, the equitable issues, ordinarily, are tried first, for this may obviate the necessity for a subsequent trial of the legal issues.'' (29 Cal.Jur.2d, § 9, p. 496.) To the same effect, see *Swasey* v. *Adair*, 88 Cal. 179, 180 [25 P. 119]; *Connell* v. *Bowes*, 19 Cal.2d 870, 872 [123 P.2d 456]; *Alton* v. *Rogers*, 127 Cal.App.2d 667, 676 [274 P.2d 487]; *Dills* v. *Delira Corp.*, 145 Cal.App.2d 124, 129 [302 P.2d 397].

■ It is apparent that there was no error in the rulings with respect to the demand for jury trial.

■ Under the guise of an argument as to insufficiency of the evidence, counsel attacks the findings that defendants

did not obtain plaintiff's consent to subleasing, and that plaintiff is not estopped to forfeit the primary lease. In truth, there is no substantial evidence to support appellants' position in this regard. Plaintiff testified that he never gave any consent to the subletting or to the alterations in the premises or to using them for purposes other than those prescribed in the lease; also that he knew nothing of any such consent having been given by Myer, if indeed that occurred. Mrs. Degen, the president of defendant Degen and Brody, Inc., testified that Myer in February or March had told her he would consent to a sublease if the tenant was satisfactory to him; this was corroborated by Mr. Hughes, a real estate broker, and by Mr. Schrodes of Allied Stores. But none of the three professed to have talked to Richard or to have known the state of his mind. However, Mr. Jules Rubens, another real estate broker, testified that in May, about the 20th to the 28th, he told Mrs. Degen that he was informed that the owner would relieve her of her lease but would not consent to a sublease. Mrs. Degen further testified: "I based all of our actions on the word of Mr. Myer who had been the owner and the party which we had our lease with." Plaintiff at the time of going into escrow knew that Degen and Brody, Inc., was desirous of subletting, but considered that "it had nothing to do with me." The escrow instructions of May 8th made it plain that there was to be no subletting without his consent. On May 19th he wrote to Myer advising him that "I do not intend to give my consent to any subletting of the premises by Degen and Brody, Inc., inasmuch as I am buying the building for my own use." After that he heard nothing about a sublease until the escrow had been closed (which was June 30). In late July plaintiff had a conversation with Mrs. Degen wherein she offered to sell to him for $3,000 the existing lease; he declined. "So she said they were going to sublease the building. I said, 'You can't sublease it without my permission, I don't want it subleased because I want the building for myself, if I can't get it now, at the end of two years.' " Plaintiff had no conversation with anyone else on the subject. About July 30th Mrs. Degen left the city and entrusted to Mr. Fink the matter of the sublease. Although the executed document is dated July 27th, it was not actually signed by the sublessee until August 13th. Meantime, on August 1st plaintiff had written to Degen and Brody, Inc., referring to his unanswered letter of July 25th, wherein he had offered to terminate the lease and

refund deposited rents (in order to get possession for his own use), and saying, among other things: "Although you have not asked my permission to sublease, still you are aware that I have seen your real estate agent's 'for lease' sign on the premises and have inquired of him, at your suggestion, what terms you have authorized him to quote, and I would not want you to infer from this that I have consented to the subleasing or will consent to it should you obtain a prospective tenant. For your protection, therefore, and for mine, I am stating plainly that I do not want a sublessee of the property." In apparent response to this Mr. Fink sent plaintiff a sizzling telegram of August 6th, making no claim of his having agreed to consent to a sublease but complaining of his "arbitrary" refusal to consent and threatening action for damages in event of continued refusal. On August 12th Richard's attorney mailed to Degen and Brody, Inc., a response which referred to paragraph 12 of the lease and said: "On behalf of Mr. Richard, you are advised hereby that he respectfully declines to consent to the proposed sub-lease which you refer to in your said telegram."

At some time before signing of the sublease on August 13th Allied Stores of America obtained from Degen and Brody, Inc., an indemnity bond of $10,000 to protect them against the results of invalidity of the sublease. Mr. Max E. Meisel, Jr., general manager of Bon Marche (Allied Stores) was interrogated about this: "Q. In your conversation with Mr. Fink did he advise you that the owner did not wish to sublet the premises? A. He did not indicate that specifically. Q. Now, Mr. Meisel, you or your company requested a bond of some kind be put up in the event you would remove from the premises, isn't that a fact? A. Right." "THE COURT: . . . Why not ask him the direct question and get this over with. Did you require that a bond be posted because there was some discussion that led your concern to believe that there was some question as to the validity of the sublease. That's a plain enough question. That was it, wasn't it? A. Yes, sir." The witness further said: "A. Well, this was an arrangement that was brought forth by Max Fink as a recommendation because of the fact that here was a piece of property and a desirable piece for our particular requirements and it was a gesture on the part of the landlord's in good faith to have us move in there to operate and this was to repay us in part if there were any problems that arose to make it necessary for us to move. THE COURT: Like

what? A. Well, to reimburse us for the painting, for the other labors and work that was involved in order to put the place in condition. THE COURT: You say in case it became necessary for you to move. What did you mean by that? A. Well, if there were any problems concerning the conditions of this lease. Q. BY THE COURT: Consent problem? A. Yes. Q. BY MR. FINK: At the time this arrangement was made nothing had been heard in return from the landlord so far as you know? A. No, sir." So the indemnity bond was given and the sublease executed.

Allied Stores having taken possession and made alterations and established a business not conforming to the terms of the lease, plaintiff Richard served on all defendants the three-day notice to quit on August 19, 1958. This was ignored and the action filed on August 29, 1958. Trial was had on December 22, 1958, and subsequent dates, judgment entered on January 23, 1959, and the defendants, having appealed, are still in possession.

Originally the answer relied upon Myer's alleged consent to a sublease. By amendment filed a month later it was alleged with respect to each paragraph concerning Myer's alleged consent: "Defendants are informed and believe and therefore allege that the facts alleged in said paragraph were at all times known to plaintiff." At page 185 of a 237-page transcript the trial judge remarked: "I allowed evidence on the same subject matter for a very limited purpose on the basis that there was a possible theory upon which knowledge of Mr. Myer could be imputed by some sort of acquiescence, or other theory, to the plaintiff here. The defendant has rested, and as I see it there is an utter absence of any such evidence." The situation did not change thereafter. We have, of course, based our narration of the facts upon the evidence most favorable to respondent (see *Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550]; *New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987]), but as previously remarked, there is no evidence of substantiality to offset it. Plainly, there is no substance to the argument that plaintiff is estopped or to the claim that the evidence is insufficient to support the finding that defendants did not obtain plaintiff's consent to the subleasing.

■ "Lessor may not arbitrarily refuse to grant consent to sub-lease," say counsel for appellant. They further say, however: "Appellants recognize that the weight of authority in California is that a lessor may arbitrarily refuse to grant

consent to a sub-letting or assignment, unless the lease specifically provides that consent shall not be arbitrarily or unreasonably withheld. It is further true that the lease in question provides for a general covenant against sub-letting and assignment and does not contain such a qualifying provision." Cases decided in other states and cited by appellants to the contrary seem not to represent the weight of authority which is stated in 51 Corpus Juris Secundum, section 36, page 550, as follows: "However, where a subletting or assignment of the leased premises without the consent of the lessor is prohibited, he may withhold his assent arbitrarily and without regard to the qualifications of the proposed assignee, unless, as discussed *infra* subdivision c of this section, the lease provides that consent shall not be arbitrarily or unreasonably withheld, and in granting his assent may impose such conditions as he sees fit. ▮ Accordingly, if the right to assign or sublet is restricted by statute or by the terms of the lease, and the lessor does not covenant to give his consent to an assignment or subletting, the lessee has no remedy against the lessor for his refusal to consent thereto." We find this contention of appellants to be untenable.

▮ Allowance of a $1,200 attorney fee to plaintiff was not erroneous. Appellants argue "that if a forfeiture is declared the lease ceases to exist and the lessor no longer has any rights or obligations thereunder." The lease provides: "16. In case suit shall be brought for an unlawful detainer of said premises, for the recovery of any rent due under the provisions of this lease, or because of the breach of any other covenant herein contained, on the part of lessee to be kept or performed, lessee shall pay to lessor a reasonable attorney's fee which shall be fixed by the court." This clearly implies a right of the successful party in an unlawful detainer to recover an attorney fee for the lease specifically refers to that type of action, which can be maintained only by the landlord, and if successful results in a forfeiture of the lease; it provides that the lessee shall pay the lessor in that event a reasonable attorney fee fixed by the court. Counsel for respondent points to the rule that a lease creates both privity of estate and privity of contract, citing *Stockton Theatres* v. *Palermo,* 124 Cal.App.2d 353, 356 [268 P.2d 799], and that the privity of contract, especially the portion pertaining to the results of a forfeiture of the estate, remains intact and enforcible. They also say: "The parties, by the terms of the lease, obviously intended that in the event it became

necessary to bring unlawful detainer proceedings, no matter what the basis of the violation was, and even though that resulted in a forfeiture of the lease, that plaintiff could recover attorney's fees. If this were not so, the provision of the lease would be meaningless. The very purpose of an unlawful detainer action is to obtain possession and if this is successful, forfeiture necessarily follows. The language of the lease is clear that it was this very type of situation which the parties intended to cover and it was under this very type of situation that Appellants agreed to pay attorney's fees.'' We agree.

Respondent requests that this court declare him entitled to an additional attorney fee for services on appeal and that we remand to the trial court the question of the amount to be allowed therefor. That an attorney fee provision in a contract such as the one found in the instant lease does include services upon appeal seems settled in this state. (See *Oakland Cal. Towel Co.* v. *Roland*, 93 Cal.App.2d 713, 719 [209 P.2d 854]; *Hahn* v. *Hahn*, 123 Cal.App.2d 97, 103 [266 P.2d 519]; *Cirimele* v. *Shinazy*, 134 Cal.App.2d 50, 52 [285 P.2d 311, 52 A.L.R.2d 860]; *Dankert* v. *Lamb Finance Co.*, 146 Cal.App.2d 499, 503-504 [304 P.2d 199]; 14 Cal.Jur.2d § 105, p. 726.) The record indicates that the trial judge probably limited the $1,200 award to services performed down to the date of judgment. If that be the case, as we think it is, the procedure outlined in *Oakland Cal. Towel Co.* v. *Roland, supra*, 93 Cal.App.2d 713, 719, seems appropriate. It is there said: ''In *Adams* v. *California Mutual Building & Loan Assn.*, 18 Cal.2d 487 [116 P.2d 75], it was also held that the reasonableness of the award is for the determination of the trial court. It was further stated in the Painter case [78 Cal. 625 (21 P. 433)], at page 627: 'This authority given the court could only be exercised when the fee, now in dispute, was to be allowed by an order made after final judgment, and the allowance is necessarily an incident to such judgment when given against the claimant as plaintiff in the action.' In accordance with the above, the trial court, if it be so inclined, may allow a *reasonable* fee for services on appeal. The judgment is affirmed. The motion for counsel fees on appeal may be filed within 30 days from the date of the filing of the remittitur.''

## PLAINTIFF'S APPEAL

The court's award of money damages runs against Degen and Brody, Inc., only. Plaintiff claims that this is

error because Allied Stores, though served with the three-day notice, continued in possession during the entire period of unlawful detainer and was the active wrongdoer in making of alterations which inflicted damage. The court found that Allied Stores, as well as Degen and Brody, Inc., was guilty of unlawful detainer, that plaintiff was damaged thereby, but plaintiff was entitled to recover money damages against Degen and Brody, Inc., only. It also found that both defendants were guilty of damaging the premises by reason of the alterations, but the award was confined to Degen and Brody, Inc., only. Appellant says this was error and we agree. The conclusion seems manifest. Section 1164, Code of Civil Procedure, says: ''No person other than the tenant of the premises and subtenant, if there be one, in the actual occupation of the premises when the complaint is filed, need be made parties defendant in the proceeding, nor shall any proceeding abate, nor the plaintiff be nonsuited for the nonjoinder of any person who might have been made party defendant, but when it appears that any of the parties served with process, or appearing in the proceedings, are guilty of the offense charged, judgment must be rendered against him. . . .'' This plainly implies damages as well as recovery of possession. Section 1174, specifically covering the subject of damages, fortifies this conclusion. Additional authority for it is found in *Amling* v. *Bryan,* 78 Cal.App. 184, 188 [248 P. 280]. In that case the lease ran to Bryan, who made an assignment or sublease contrary to the terms of his lease. Unlawful detainer was pursued against Bryan and against one Saxton, who held the property during the entire unlawful detainer period; the subtenant abandoned possession upon service of notice to quit and Saxton took and retained possession. At page 188, it is said: ''The court further found: '. . . that it is not true that the defendant Helen E. Saxton occupied and possessed the said premises from February 6, 1925, to March 3, 1925, as the representative and agent of said defendant C. T. Bryan and under and by virtue of said power of attorney, but on the contrary said defendant Helen E. Saxton occupied and possessed the premises during said period as assignee of the interests and title therein of defendant C. T. Bryan, *and for her own use and benefit*; . . .' It thus appearing that defendant Saxton was wrongfully in possession of the premises 'as assignee of the interests and title' of the original lessee and that on her own account she remained in such possession for a considerable period after

the three days' notice to quit had been served upon her, it is apparent that her liability for the damages of which appellants complain ensued as a matter of course.'' We see no escape from the conclusion that Allied Stores is liable to plaintiff for damages in this case. This assignment of error is well taken. The fact that Allied Stores was in possession of only part of the premises does not alter its liability, for it occupied the building upon the front of the lot, the main portion of the leased premises, and thereby effectively precluded plaintiff's enjoyment of any portion of the premises.

The foregoing observations do not apply to the attorney fee allowed by the court, for the absence of any contractual relationship between plaintiff and Allied Stores precluded such an award. (*Cf. D'Amico* v. *Riedel,* 95 Cal. App.2d 6, 10 [212 P.2d 52].) Plaintiff rejected the sublease as void and hence cannot rely upon it as a contractual provision for payment of attorney fees.

Plaintiff argues that the award of damages is inadequate. Our examination of the record and the briefs discloses that this contention presents a question of weight of conflicting evidence and inferences and that therefore it would be beyond our province to interfere with the pertinent finding.

Plaintiff next contends that the damages should have been trebled, that the trial judge had a mandatory duty so to do because the detainer was found to be willful. The court did find to be true the allegations of paragraph IX of the complaint which alleges that ''defendants, and each of them . . . continue in possession of said premises willfully and without permission of plaintiff.'' But the conclusions do not follow through on this point and in effect deny any trebling. Section 735, Code of Civil Procedure, says: ''If a person recover damages for a forcible or unlawful entry in or upon, or detention of any building or any cultivated real property, judgment may be entered for three times the amount at which the actual damages are assessed.'' Section 1174: ''Judgment against the defendant guilty of the forcible entry, or the forcible or unlawful detainer may be entered in the discretion of the court either for the amount of the damages and the rent found due, or for three times the amount so found.'' Plaintiff relies upon *Board of Public Service Commrs.* v. *Spear,* 65 Cal.App. 214 [223 P. 423], which held that an award of treble damages is mandatory where the court finds the detainer to have been willful. In 1872, Civil Code, section 3345 was enacted, reading: ''If any tenant, or any person in collusion with the tenant,

holds over any lands or tenements after demand made and one month's notice, in writing given, requiring the possession thereof, such person holding over must pay to the landlord treble rent during the time he continues in possession after such notice.'' Section 1174, Code of Civil Procedure, as enacted in the same year made treble damages obligatory.[1] Section 735 left the matter in a permissive status.[2]. In 1907, section 1174 was amended to declare treble damages to be discretionary and the section has so remained at all times since. In *Board of Public Service Commrs.* v. *Spear, supra,* 65 Cal.App. 214, it was claimed that the amendment of section 1174 effected a repeal of section 3345, Civil Code. The court stated, at page 216: ''Although this argument presents an interesting question, we think it is one which we are not required to pass upon in the instant case. The facts of this case place it squarely within the provisions of section 3345 of the Civil Code. If it be conceded that this section was repealed, and that the provisions of section 1174 of the Code of Civil Procedure are applicable here, we think the trial court would still have been bound to render judgment for treble the amount of the rent found due.'' It affirmed an award of treble damages. In *Field* v. *Walton,* 94 Cal.App. 596, 599 [271 P. 500], it was held that the repeal of section 3345, Civil Code, had been effected by the amendment of section 1174, Code of Civil Procedure, and a judgment denying treble damages was affirmed. In neither of these cases was an application made for hearing in the Supreme Court. We have been cited and have found no case other than *Board of Public Service Commrs.* v. *Spear, supra,* 65 Cal.App. 214, which decides that treble damages are mandatory in a case of unlawful detainer which is willful. We take notice of hostility toward penalties as a settled principle of our statutory and case law (*cf.* 22 Cal. Jur.2d, §§ 5 and 6, pp. 504, 505; *Bisno* v. *Sax,* 175 Cal.App. 2d 714, 725-726 [346 P.2d 814]), and conclude that *Board of Public Service Commrs.* v. *Spear, supra,* decided in 1924, does not correctly reflect the modern trend of judicial thought in

[1]Code Civ. Proc., § 1174 (1872): ''. . . The jury, or the Court, in case the proceeding is tried without jury, must also assess the damages occasioned to the plaintiff by the forcible entry or detainer, or in case of rent unpaid, the amount of rent then due, and thereupon judgment against the defendant for three times the amount of such damages or rent, as the case may be, so found or assessed, must be entered.''

[2]Code Civ. Proc., § 735 (1872): ''If a person recover damages for a forcible or unlawful entry in or upon, or detention of any building or any cultivated real property, judgment may be entered for three times the amount at which the actual damages are assessed.''

304

this area. While the evidence at bar would have justified abundantly a trebling of damages, we do not feel warranted in interfering with the trial judge's discretion as exercised in this instance.

The conclusions of law are amended by inserting the words "and defendant Allied Stores of America" after the words "defendant Degen & Brody, Inc." in paragraphs IV and V of the conclusions. The judgment is amended by striking from paragraph 4 the word "only" and substituting therefor the words "and defendant Allied Stores of America"; also by inserting in said paragraph the words "said defendants" in the place and stead of "defendant Degen & Brody, Incorporated"; paragraph 5 of the judgment is amended by inserting after "Degen & Brody, Incorporated" the words "and defendant Allied Stores of America." As thus modified the judgment is affirmed. The plaintiff may file in the superior court a motion for attorney fee on appeal within 30 days from date of filing of remittitur.

Plaintiff Richard to recover his costs upon both appeals.

Fox, P. J., and Herndon, J., concurred.