[Civ. No. 62646. Second Dist., Div. Four. Aug. 12, 1982.]

BOSTON PROPERTIES et al., Plaintiffs and Respondents, v.
PIRELLI TIRE CORPORATION et al., Defendants and Appellants.

COUNSEL

Richards, Watson, Dreyfuss & Gershon and Robert M. Goldfried for Defendants and Appellants.

Loeb & Loeb, Robin Meadow and Andrew S. Clare for Plaintiffs and Respondents.

## OPINION

McCLOSKY, J.—Respondents, Boston Properties, a Massachusetts business trust, and Mortimer B. Zuckerman (hereafter referred to as Boston), filed a complaint and later a first amended complaint (hereafter the complaint) against appellants, Pirelli Tire Corporation, Pirelli Sales Pacific and Pirelli Sales West, Inc. (hereafter referred to as Pirelli or appellants) and others for unlawful detainer, seeking a forfeiture of the lease entered into between appellants as lessees, and respondents as lessors, on certain property in Los Angeles County, seeking to be restored to possession of those leased premises and for damages. No cross-complaints were filed.

After a trial of the issues by the Honorable Philip H. Richards, referee by order of reference, pursuant to the provisions of Code of Civil Procedure section 638, subdivision (1), findings of fact and conclusions of law were made. Among other things, the court found that the provision in the lease against subletting without respondents' consent had been breached by appellants. The court then gave judgment in favor of respondents and against appellants and others, ordered the lease forfeited, ordered possession restored to respondents and awarded them damages for the fair rental value against appellants in the amount of $70,473.17 plus costs and attorneys' fees. Pirelli appeals from the entire judgment.

### APPELLANTS' CONTENTIONS

. The main issue presented on this appeal is the application to successive subleases of a lease covenant against subletting without the prior written consent of the lessors. Appellants take the position that the covenant against subletting contained in the master lease involved did not require appellants to seek or obtain respondents' prior written consent to a sublease between appellants' sublessee, Richardson, and that sublessee's sub-sublessee, Gill. They contend that the trial court erred as a matter of law in broadly construing the language of the lease provision against subletting and declaring a forfeiture based thereon; that the simple, clear and compelling rules of construction relating to lease language which might result in a forfeiture require strict and narrow construction of such lease language against the party seeking to benefit thereby in order to avoid forfeiture unless the clear, unmistakable and manifest intention to so provide is expressly stated in the lease; and that the award of damages against Pirelli only was improper as it was re-

quired to have been against Pirelli, Richardson and Gill jointly. Appellants also contend that the award of attorneys' fees was improper.

FACTS

The following, among other things, was stipulated to by the parties and the trial court found that:

1. On October 6, 1972, C.C.& F. Los Angeles Properties, Inc., as lessor, and Pirelli entered into a written lease (hereafter referred to as the master lease) for certain improved property (the subject property) in Compton, California.

2. Both C.C.& F. Los Angeles Properties, Inc. and Pirelli were represented by independent counsel in connection with the negotiation and drafting of the master lease. The master lease was prepared by counsel for C.C.& F. Los Angeles Properties, Inc.; however, counsel for Pirelli made comments and modifications with respect thereto.

3. By written assignments dated February 17, 1976, all of the lessor's rights under the master lease were assigned to Boston.

4. On or about April 3, 1978, and pursuant to article N of the master lease, Pirelli requested in writing that respondents consent, and respondents did give their written consent, to a sublease of the subject property by Pirelli to Richardson. Prior to giving their consent to the aforesaid sublease, respondents reviewed certain written materials pertaining to the sublease, which written materials respondents received from Pirelli and Richardson. That material included a copy of the proposed sublease between Pirelli and Richardson, a copy of a guarantee by certain of Richardson's principals guaranteeing Richardson's obligations under the sublease to Pirelli, a copy of a statement of assets and liabilities of Ronald L. Richardson Warehouses and an individual financial statement of Irving L. Drell. Additionally, respondents were provided with written information concerning Richardson's business background and experience.

5. In or about April of 1978, Pirelli and Richardson entered into a written sublease with respect to the subject property, the term of which commenced on May 11, 1978. Paragraph 19 of that Pirelli-Richardson sublease provides, among other things, that said sublease is subject to the terms of the master lease.

6. In January of 1980, Richardson entered into a sublease with Gill with respect to the subject property. Pirelli did not enter into a sublease with Gill with respect to the subject property. At no time prior to the sublease between Richardson and Gill did anyone provide Boston with written financial information concerning Gill or its principals or with copies of any of the written documents relating to or embodying the sublease.

7. On or about March 24, 1980, respondents learned of the sublease of the subject property by Richardson to Gill, and by letter dated April 17, 1980, respondents informed Pirelli, inter alia, that by virtue of the Richardson-Gill sublease Pirelli was in default of its obligations to respondents under article N[1] of the master lease. Said article N provided, among other things, that lessee would not assign the lease in whole or in part, nor sublease all or any part of the demised premises without the prior written consent of lessor, which consent was not to be unreasonably withheld.

Richardson did not ask Pirelli to obtain the consent of Boston to the Richardson sublease to Gill, but pursuant to paragraph 12.1 of the Pirelli-Richardson sublease requested that Pirelli itself consent to Richardson's subletting of the subject property to Gill.[2] On March 21,

---

[1]Said article N provides in pertinent part: "Lessee will not assign this Lease in whole or in part, nor assign any option to lease or option to purchase additional property contained herein or granted in conjunction herewith, nor sublet all or any part of the Demised Premises, without the prior written consent of Lessor in each instance, which said consent will not be unreasonably withheld, provided that in no event may any such option to lease or purchase property be assigned unless the Lease itself is also assigned. The consent by Lessor to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. . . . If this Lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anybody other than Lessee, Lessor may collect rent from the assignee, undertenant or occupant and apply the net amount collected to the rent here in reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Lessee from the further performance by Lessee of covenants on the part of Lessee herein contained. Notwithstanding any assignment or sublease, Lessee shall remain fully liable on this Lease and shall not be released from performing any of the terms, covenants and conditions of this Lease."

[2]In the "Memorandum of Opinion and Notice of Intended Decision," the trial court found that: "if a reason for Pirelli's failure to seek consent to the Gill sublease is sought, it may well be found in the fact that in January 1980, Richardson was in arrears for eight months' rent amounting to approximately $78,000 and the Gill sub-lease which Pirelli approved but which plaintiffs might not have approved, was Pirelli's only salvation to recoup Richardson's arrearages."

1980, Pirelli gave its consent to Richardson to allow Richardson to sublease the subject property to Gill. The Pirelli-Richardson sublease referred to was made subject to the master lease. Pirelli did not represent to Richardson that it had sought or obtained the consent of the respondents to the Richardson-Gill sublease.

8. On May 19, 1980, pursuant to California Code of Civil Procedure section 1161, subdivision (4), respondents served upon Pirelli, Richardson and Gill a notice to quit. Gill continued to occupy the property until the action came to trial.

## DISCUSSION

 Appellants' first contention is that the trial court erred as a matter of law in broadly construing the language of article N of the master lease and declaring the forfeiture based thereon, alleging that such broad construction is neither consistent with the dictates of the well established law of this state. They argue that the issue presented to this court on this appeal is a simple one, involving merely the construction of a lease covenant against subletting. It concedes the "general validity of lease covenants against subletting" but contends that the covenant against subletting contained within the master lease did not, and does not, require appellants to seek and obtain respondents' consent to a sub-sublease (Richardson-Gill sub-sublease) between appellants' sublessee (Richardson) and that sublessee's sub-sublessee (Gill). The trial court held that the covenant against subletting, when read together with the other provisions of the master lease, did require appellants to seek and obtain respondents' consent to such a subletting. We agree.

The plain language of the pertinent portion of article N provided as follows: "Lessee will not . . . sublet all or any part of the Demised Premises, without the prior written consent of the Lessor in each instance, . . . The consent by Lessor to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent . . . subletting." That language is plain and simple. It requires no construction. The evidence presented to the trial court demonstrated that at no time did Boston or anyone acting on its behalf represent to Pirelli, Richardson or Gill that Boston was waiving the provisions of article N, or that they, or any of them, need not comply with that subletting provision of article N of the master lease.

As the trial court found article L-1 "of the master lease defines an event of default to include: 'Default in the performance of any of Les-

see's covenants, agreements or obligations hereunder, said default, . . . continuing for thirty (30) days after written notice from Lessor to Lessee.' Article L-2 thereof provides that: 'Upon the happening of any such event of default Lessor at any time thereafter may: (1) Either with or without notice or demand, declare the term ended . . . .'"

*Fifth & Broadway Partnership* v. *Kimny, Inc.* (1980) 102 Cal. App.3d 195, 200 [162 Cal.Rptr. 271, 7 A.L.R. 4th 580], explains that: "An unlawful detainer action is not based upon contract [citations] . . .; it is a statutory proceeding and is governed solely by the provisions of the statute creating it. (*Seidell* v. *Anglo-California Trust Co.* (1942) 55 Cal.App.2d 913, 920 [132 P.2d 12].)" This was an unlawful detainer action. Further "[a] sublessee is bound by the terms and conditions of the original lease; its rights are dependent upon and subject to the sublessor's rights." (*Fifth & Broadway Partnership* v. *Kimny, Inc., supra*, at p. 201.) Successive sublettings do nothing to change or enlarge the rights of the sublessor, who is the lessee under the master lease, absent the consent of the master lessor to such change or a waiver by the master lessor of its rights in that regard. There was no such consent or waiver in the case at bench.

The aforesaid plain language of article N prohibited Pirelli from entering into any sublease without Boston's consent. Neither Richardson nor anyone else subletting directly or indirectly from Pirelli or in succession to Pirelli or its sublessee had any greater rights under the master lease or to the demised premises than Pirelli had. Pirelli could not give Richardson or anyone else any more than it had. Conversely, the failure of any successive sublessee to live up to the terms of the master lease could not, and did not, enlarge Pirelli's rights under that lease.

The parties to the appeal spend a great deal of time in their briefs discussing the rights, duties and obligations of the sublessees and subsublessees vis-à-vis one another, but neither the sublessees nor the subsublessees are parties to this appeal, and we therefore need not, and do not, decide the respective rights or duties of any of those nonparties to this appeal in respect to any of the parties to this appeal. It need only be said in that regard that ". . . since the subtenant's tenancy is subordinate to the covenants of the master lease, if *they* are breached by the subtenant the landlord can terminate the master lease . . . ." (Italics in original.) (4 Miller & Starr (rev. 1977) Current Law of Cal. Real Estate, § 27:91(3), p. 414.) It follows that if the failure to obtain the

written consent of landlord Boston to the Richardson-Gill sublease constituted a breach of article N, then Boston had the right to terminate the master lease and the rights of Pirelli under the master lease and to the demised premises.

*Kendis* v. *Cohn* (1928) 90 Cal.App. 41 [265 P. 844] makes clear that the rule in *Dumpor's* case[3] is not the law in California. In *Kendis*, the appellate court overturned the trial court's conclusion that a provision in a lease constituted an assignment and determined that it was a sublease, stating: "it would seem the instrument is constituted a sublease and not an assignment, and the condition against subletting being a continuous covenant, the waiver of the condition [i.e. the giving of consent] as to one subletting does not discharge the condition. [Citations.] *It follows therefore, whether the instrument in question be an assignment or a sublease, the same result obtains*, and while respondent [Kendis] has the right to quiet and undisturbed possession of the premises under the terms of the lease upon complying with its terms, she would not be licensed to assign or sublet without the consent of appellants." (Italics added.) (*Kendis* v. *Cohn, supra*, 90 Cal.App. at p. 59.)

The *Kendis* court did not interpret the specific language of the lease provision it was reviewing. It held as a matter of law that the language of that lease,[4] which in pertinent part was almost the same as that in article N, created a "continuing covenant" against subletting without consent that was binding on all assignees and sublessees.

In *Crowell* v. *City of Riverside* (1938) 26 Cal.App.2d 566 [80 P.2d 120], a case involving facts somewhat similar to those in the case at bench, the master lease contained an assignment and subletting provision stating in part that: ". . . no sublease will be made of this property

---

[3]That rule is described in *Kendis* v. *Cohn, supra*, 90 Cal.App. 41, 52 as follows: "That *a condition* against assignment without the license of the lessor *is entire and cannot be apportioned* by the act of the parties; and that a license given and an assignment made pursuant thereto destroys the whole condition, leaving the assignee or any subsequent assignee at full liberty to assign the lease to whomever they please." (Italics in original.)

[4]In *Kendis* v. *Cohn*, the lease between the Cohns (lessors) and Barkers (lessees) contained an assignment and sublease restriction which read in pertinent part as follows: "Said lessees . . . shall not assign . . . and shall not sublet the premises nor any portion thereof, without the written consent of the said lessors first had and obtained; and any assignment of this lease, whether voluntary or involuntary or by any operation of law or otherwise, without such written consent of said lessors, shall, at the option of said lessors, terminate the lease, and the lessees hereby waive notice of the exercise of such option." (90 Cal.App. at p. 48.)

... without written consent thereto by lessors, ..." (*Crowell* v. *City of Riverside, supra*, at p. 569.) When a sublessee entered into a sublease without the landlord's consent, the latter served the lessee with a notice terminating the lease and the sublessee with a notice demanding possession of the property. In the ejectment and quiet title action that followed, the appellate court held that the restriction in the master lease bound the sublessee. The *Crowell* court (at p. 573) first stated: "There has been a pretty general understanding, even where Dumpor's case has been recognized as law, that its doctrine is inapplicable to subleases ..." and held, as we do, that the rule of *Miller* v. *Reidy* (1927) 85 Cal.App. 757 [260 P. 358], on which appellants herein partially rely, being an assignment case, is inapplicable to subleases such as are involved in the case at bench. In *Crowell*, the first subletting was specifically mentioned in the master lease. That court held that the covenant against subletting was not nugatory, but was intended to apply to subsequent subleases. Moreover, in *Miller*, the master lease did not contain a counterpart to the provision in article N, that consent to "any subletting was not consent to any subsequent subletting."

We conclude that as a matter of law article N was binding on Pirelli and Richardson and that there was substantial evidence to support the trial judge's finding that its provisions had not been waived by Boston. We conclude further that Richardson's subletting to Gill without Boston's consent, with Pirelli's knowledge and consent, and without any effort by Pirelli to obtain Boston's consent to that sub-subleasing constituted a breach of that master lease by and attributable to appellant Pirelli. (See *Keystone Properties* v. *Batey Moving & Stor. Co., Inc.* (Tenn. 1974) 505 S.W.2d 472.)

We have made our independent review of the language of the master lease. From that language, we reach the same conclusions as to its provisions and legal effect as did the learned referee and trial judge.

■ Appellants urge that we are bound to strictly construe the lease terms against respondents because Civil Code section 1442 states that "[a] condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Appellants also urge that, as Boston's predecessor drew the master lease provisions involved, they must be interpreted against Boston. Dealing with the latter contention first, we note that the parties agreed in the "Stipulated Facts Re Referee [C.C.P. § 638 (1)]" that: "3. Both C.C.& F. Los Angeles Properties, Inc. [Boston's predecessor] and Pirelli were represented by inde-

pendent counsel in connection with the negotiation in drafting of the master lease. The master lease was prepared by counsel for C.C.& F. Los Angeles Properties, Inc., however, *counsel for Pirelli made* comments and *modifications with respect thereto.*" (Italics added.) We are, therefore, not required to construe its provisions in favor of or against either party. More importantly, the language of article N is plain and clear. It requires no fanciful construction or interpretation by us. Pirelli breached its manifest and unambiguous terms. We are neither required to, nor do we choose to, ascribe an illogical meaning to a contract provision because the contract language might also be hypertechnically susceptible to it. The courts are not required to resort to scholastic subtleties to save tenants from the consequences of their deliberate breach of their covenants. (See *De Angeles* v. *Cotta* (1923) 62 Cal.App. 691, 695 [217 P. 821].)

Appellants next conclude that a full examination of the equities of the case compels the conclusion that the fairest and most just construction of the lease is to construe article N so as to avoid a forfeiture. What we have said earlier about the plain language of the lease provisions in question requiring no construction is dispositive of this point and makes it unnecessary to discuss it further. We note only that section 1179 of the Code of Civil Procedure provides the only method of seeking relief from the harshness of a forfeiture such as is here involved. Had appellants brought such a motion at the trial court level, that court would have been permitted to base its decision on equitable considerations. (See *Olympic Auditorium, Inc.* v. *Superior Court* (1927) 81 Cal.App. 283, 286 [253 P. 944] and *Agoure* v. *Plummer* (1917) 175 Cal. 543, 547 [166 P. 311].) It did not make such a motion pursuant to said section at the trial court level and may not do so for the first time in this appeal.

Nor does Civil Code section 3275[5] provide relief from a grossly negligent, wilful, or fraudulent breach of duty. (See *Crowell* v. *City of Riverside, supra*, 26 Cal.App.2d 566, wherein the court held in a closely similar fact situation that a forfeiture for the breach of a covenant against subletting is not one from which relief can be obtained under either § 3275 or other equitable principles.)

---

[5]Section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, *except in case of a grossly negligent, willful, or fraudulent breach of duty.*" (Italics added.)

■ Appellants next contend that the trial court erred in awarding damages for the fair rental value of the subject premises against appellants only for the period May 20, 1980, and ending October 15, 1980. They contend that said award should have been against (sublessee) Richardson and (sub-sublessee) Gill as well, in view of the court's conclusion that appellants, Richard and Gill were in unlawful possession of the subject property and urge that if this court does not reverse the trial court's judgment, it should order the conclusions of law and judgment amended to reflect the award of money damages against appellants, Richardson and Gill jointly and severally.

Appellants cite *Richard v. Degen & Brody, Inc.* (1960) 181 Cal. App.2d 289 [5 Cal.Rptr. 263], for authority for this proposition that if all three were in unlawful possession of the subject property the award of damages for fair rental value must *jointly* be against Richardson and Gill as well as against appellants.

In that case, the plaintiff leased the demised premises to Degen and Brody, Inc. That lease contained a provision against subletting without consent of the lessor. Lessee, without lessor's permission, sublet to Allied Stores, which sued both Degen and Brody, Inc. and Allied Stores in unlawful detainer for breach of the covenant against subletting, among other things. The trial court found that the covenant against subletting had been violated and that both lessee Degen and Brody, Inc. *and* sublessee Allied Stores had unlawfully detained the premises. The trial court awarded money damages for fair rental value only against Degen and Brody, Inc.

Citing Code of Civil Procedure section 1164, which provides that when any of the parties served with process, or appearing in the proceeding "are guilty of the offense charged, judgment must be rendered against him or her . . .," the appellate court held that that statutory language plainly implies damages as well as recovery of possession (*id.*, at p. 301), and also that, as Allied Stores was found to have unlawfully detained the premises and was in fact the party in possession as sublessee, that the damage award had to run against it as well as against Degen and Brody, Inc. The court held that it was error to award damages only against the lessee-sublessor and ordered the conclusions of law and judgment amended to reflect an award of damages against the defendant in possession as well. Appellants urge us to do the same. We decline to do so.

In *Frank* v. *Mangum* (1915) 237 U.S. 309, 347 [59 L.Ed. 969, 988, 35 S.Ct. 582], Justice Oliver Wendell Holmes stated: "Whatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard." That reasoning is equally applicable to the appellate process and to the appeal.

In the *Richard* v. *Degen & Brody, Inc., supra,* 181 Cal.App.2d 289 case, whether sublessee Allied Stores was a party to that appeal or not is not clearly apparent, but in the case at bench neither Richardson nor Gill are parties to this appeal. Neither has had an opportunity to present its position to us in this appeal. The judgment is final as to the Gill and Richardson parties.

In speaking of section 1164 in another context, our Supreme Court in *Arrieta* v. *Mahon* (1982) 31 Cal.3d 381, 392 [182 Cal.Rptr. 770, 644 P.2d 1249] recently explained that "[s]ection 1164 does not suggest, nor should it be read to suggest, that the rights of those who are not joined may be determined in their absence."

By a parity of reasoning, it appears to us, in view of the foregoing facts, that it would be offensive to the concept of due process and fundamental fairness to so radically affect the rights of Gill and Richardson by a decision in an appeal to which neither is a party and has had no opportunity to be heard, and as to a judgment which has long since been final as to each of them. We decline to do so.

## ATTORNEYS' FEES

Appellant Pirelli does not dispute the right of the prevailing party on appeal to an award of attorneys' fees. In fact, it has requested attorneys' fees on appeal in the event we determine that it is the prevailing party. It suggests, however, that the preferable method is not to have this court make such determination based upon the declaration of an attorney, the reasonableness of which Pirelli contests if respondents prevail, but rather to have the trial court determine the amount of fees to be awarded. (See *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 248 [302 P.2d 289]; *Western Camps, Inc.* v. *Riverway Ranch Enterprises* (1977) 70 Cal.App.3d 714, 730 [138 Cal.Rptr. 918].)

Additionally, article Q-6 of the master lease provided that "[i]n any action or proceeding which the Lessor or the Lessee may be required to

prosecute to enforce its respective rights hereunder, the unsuccessful party therein agrees to pay all costs incurred by the prevailing party therein, including reasonable attorneys' fees, to be fixed by the Court, and said costs and attorneys' fees shall be made a part of the judgment in said action." As respondents concede, this court may direct the superior court to hear an application for attorneys' fees for legal services rendered on appeal. (See *American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 67 [76 Cal.Rptr. 898].) While we determine respondents are entitled to attorneys' fees, the declaration in the appendix of respondents' brief is insufficient to allow us to determine those fees.

The judgment is affirmed. Respondents shall recover, in addition to the normal costs on appeal, such sum as the trial court, after a hearing, shall determine will reasonably compensate respondents for their attorneys' fees for services in this court.

Kingsley, Acting P. J., and Tevrizian, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.