[No. B006304. Second Dist., Div. Seven. Nov. 21, 1985.]

THRIFTY OIL CO., Plaintiff and Respondent, v.
ALFRED A. BATARSE et al., Defendants and Appellants.

**COUNSEL**

Dolman, Wolfe & Linden and Stanley C. Imerman for Plaintiff and Respondent.

Cotkin, Collins, Kolts & Franscell, Bruce A. Friedman and Carol Ann Hummer for Defendants and Appellants.

**OPINION**

**SCHWAB (H. J.), J.**\*—This is an appeal from a judgment in favor of plaintiff and respondent Thrifty Oil Co. against appellants and defendants, Alfred N. Batarse, Juan S. Zapanta, and Delfin L. Dino, arising out of an unlawful detainer action and a later order denying appellants' petition for relief from forfeiture.

On October 18, 1978, Gulf Oil Corp., sublessor, and appellant Batarse, sublessee, entered into a sublease of a gasoline station (Station No. 1464) located at 2560 Glendale Boulevard, Los Angeles. The sublease was for a period beginning October 18, 1978 and ending December 31, 1981. In this sublease was paragraph 20 which read as follows: "ASSIGNMENT: Sublessee shall not assign or transfer this Sublease or any interest therein nor sublet the premises in whole or in part without the written consent of Sublessor first had and obtained, nor may Sublessee's interest under this Sublease be assigned by operation of law; and the consent by Sublessor to any one assignment or subletting shall not be construed as waiving Sublessor's right to refuse to consent to any subsequent assignment or subletting."

A portion of the sublease also stated that it would be deemed a default and breach of the sublease by sublessee where there was the ". . . failure by Sublessee to observe and perform any . . . provision of this Sublease to be observed and performed by Sublessee . . . ."

On May 4, 1981, Gulf assigned its leasehold estate in the above-mentioned service station to plaintiff and respondent, Thrifty Oil Co. (Thrifty). Thrifty accepted the assignment and agreed to be bound by the obligations and duties of the lease entered into with appellant Batarse. Appellant Batarse was given notice respondent Thrifty had become his lessor.

On or about January 16, 1983, appellant Batarse sublet his interest in the service station to appellants Dino and Zapanta. Appellant Batarse never gave notice of the sublease to respondent Thrifty and never sought respondent Thrifty's consent for the sublease to appellants Dino and Zapanta.[1]

---

\*Assigned by the Chairperson of the Judicial Council.

[1]There was conflicting testimony as to whether or not appellant Batarse had told an agent of Thrifty, James Cochrane, in December 1982, that he had found a buyer for his business. The trial court resolved this factual issue against appellants.

In February 1983, an agent of Thrifty, James Cochrane, visited the gasoline station premises to collect February rent, as appellant Batarse's rent check from February had been returned without sufficient funds. When Mr. Cochrane arrived at the premises, he observed a sign stating that the station was under new management and appellant Batarse was not present. Mr. Cochrane spoke with appellants Zapanta and Dino and told them that they had no business being on the premises and that he did not know who they were. He left word to have appellant Batarse call him and reported to his superiors at Thrifty where they discussed the matter quite thoroughly.

About the second week in March, Mr. Cochrane again visited the premises in issue to get more details. Appellants Zapanta and Dino discussed the sublease they had with appellant Batarse. Mr. Cochrane had told them that there was no validity in that lease as appellant Batarse had "no permission" to lease the premises.

Mr. Cochrane testified that he had a conversation with appellant Batarse who was acrimonious. He further testified that appellant Batarse never asked Thrifty for consent to sublease his premises in writing or even orally, and that he (Mr. Cochrane) had never given consent for the sublease. Although Thrifty had knowledge of the sublease between appellant Batarse and appellants Zapanta and Dino, it accepted the March and April monthly lease payments.[2]

On April 7, 1983, appellants were served the written notice to quit the premises upon which this litigation is based.

A full hearing took place on July 19, 20, and 21, 1983 in Los Angeles Superior Court. At that time the law was clearly in accord with *Richard* v. *Degen & Brody, Inc.* (1960) 181 Cal.App.2d 289, 298-299 [5 Cal.Rptr. 263]. The *Richard* case held that where the terms of a lease prohibit the assignment without lessor's consent, the lessor can arbitrarily refuse to consent to an assignment unless there is a qualifying provision that consent by the "landlord" may not be unreasonably withheld. The trial judge ruled in favor of respondent Thrifty noting that "The black letter law, or the black letter lease provision requiring consent to any sublease is the point in favor of the plaintiff . . . ." However, the trial judge in his oral statements and in a carefully crafted Statement of Decision filed on September 19, 1983 found as follows: "The Court finds, however, that all of the equities run in favor of defendants. The subject service station is one of five or six out of

---

[2]Thrifty tendered a check for the prepaid April rent and for that portion accruing after the termination notice. The March rent payment was made before Mr. Cochrane went to the gasoline station in issue the second time.

200 service stations that Thrifty does not run as a Thrifty station. Thrifty was not interested in determining whether or not defendants Dino and Zapanta would be acceptable tennants [*sic*] because Thrifty wanted to obtain the station for its own operation. This is true even in light of the facts that the new sublessees, particularly Mr. Zapanta, has long term experience in auto mechanics and the new sublessees have greater financial wherewithal than defendant Batarse with whom Thrifty had a direct sublessor-sublessee agreement. Moreover, in the event that Thrifty consented to the sublease, defendant Batarse would remain responsible to Thrifty Oil Co. for payment of rent, and Thrifty would have the ability to enforce any violation of its sublease with defendant Batarse against defendant Batarse as well as defendants Zapanta and Dino.

"The Court believes, however, that it is compelled to rule in favor of plaintiff on the basis of the black letter Lease provision which provides that there shall be no subleasing without the written consent of Thrifty and on the law in California construing this provision. The Court believes, however, that this is an area of law that the Court of Appeal should scrutinize both with respect to the waiver issue as well as the enforceability of the anti-subleasing clause. . . ."

On September 23, 1983, Division Four of the Second Appellate District of the Court of Appeal rendered the decision of *Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321, 330 [195 Cal.Rptr. 84]. This case rejected the *Richard* decision and held that where any ". . . lease provides for assignment or subletting only with the prior consent of the lessor, a lessor may refuse consent only where he has a good faith reasonable objection to the assignment or sublease, even in the absence of a provision prohibiting the unreasonable or arbitrary withholding of consent to an assignment of a commercial lease."

On November 11, 1983, appellants argued that they be relieved from forfeiture under section 1179 of the Code of Civil Procedure which provision allows a court to relieve a tenant against a forfeiture of the lease in case of "hardship." In their moving papers appellants cited and discussed the recent *Cohen* opinion. The trial court denied the petition to set aside the forfeiture since there had been no request by appellant Batarse for any consent to sublet as contrasted with the *Cohen* matter. Appellants Batarse, Zapanta and Dino appeal both the judgment in favor of Thrifty and the denial of the petition against forfeiture of the lease. They allege, in effect, that the trial judge erred in ruling that there was no implied duty of good faith and fair dealing in the subleasing provision of the commercial lease, erred in ruling that there was no waiver of the breach of the provision by acceptance of monthly payments in March and April, and further that the trial court

abused its discretion in failing to grant relief from forfeiture for breach of the lease.[3]

■ We remand the matter back to the trial court with directions for further consideration of the petition to set aside the forfeiture consistent with this opinion, and otherwise affirm. As noted, *Cohen* v. *Ratinoff, supra,* 147 Cal.App.3d 321, rejected the 1960 decision of *Richard* v. *Degen & Brody, Inc., supra,* 181 Cal.App.2d 289, on the grounds that in the time since *Richard* had been decided, there had been an increased recognition of an emphasis on the duty of good faith and fair dealing inherent in every leasehold. The court further held that when the lease provides for assignment or subletting only with the prior consent of the lessor, a lessor may refuse consent only where he had a good faith and reasonable objection to the assignment or sublease, even where there was lacking a provision prohibiting the unreasonable or arbitrary withholding of consent to an assignment of a commercial lease. The court gave examples of bases for such good faith reasonable objection as ". . . inability to fulfill terms of the lease, financial irresponsibility or instability, suitability of premises for intended use, or intended unlawful or undesirable use of the premises." (*Cohen* v. *Ratinoff, supra,* 147 Cal.App.3d 321, 330.) *Cohen* was followed in *Schweiso* v. *Williams* (1984) 150 Cal.App.3d 883, 886 [198 Cal.Rptr. 238] and cited with approval in *Don Rose Oil Co., Inc.* v. *Lindsley* (1984) 160 Cal.App.3d 752, 760 [206 Cal.Rptr. 670]. (See also *Prestin* v. *Mobil Oil Corp.* (9th Cir. 1984) 741 F.2d 268, 271.)[4]

However, as pointed out by respondent, *Cohen* and its progeny relate to circumstances wherein consent has been sought, either before or after an assignment of a lease and, as such, a court could analyze whether or not the refused consent was arbitrary or unreasonable. In this particular case, appellant Batarse had subleased the subject gas station without ever attempting to gain consent or notifying Thrifty. Respondent is correct in noting that a request for consent to sublet is not a mere formality, as it affords the lessor the opportunity to protect his interests and also minimizes the risks that a sublessee will place himself in jeopardy. It also is a hallmark of "common courtesy," which is the cornerstone of "good faith and fair dealing." To eliminate the requirement of consent would cause chaos relative

---

[3] A stay of execution on the judgment was granted, pending appeal, so long as lease payments continued to be paid.

[4] In *Hamilton* v. *Dixon* (1985) 168 Cal.App.3d 1004, 1008-1011 [214 Cal.Rptr. 639], *Cohen* was severely criticized and was held not to be applicable to a leasehold entered into before the *Cohen* decision was rendered. It should be noted that the court in *Kendall* v. *Ernest Pestana, Inc.* (Cal.App.) rejected the *Cohen* standard and instead followed *Richard*. The California Supreme Court granted a hearing in the *Kendall* matter (S.F. 24851, hg. granted Feb. 21, 1985).

to the myriad number of leases which have similar covenants against sub-letting. Tenants who are unable or who refuse to provide their landlords with sufficient data to allow them to make an informed decision would take matters into their own hands. Litigation would increase and the certainty of contracts would be in question.

Thus, this court need not decide whether *Richard* or *Cohen* applies to the interpretation of the assignment clause in issue, since no consent was sought, either in writing or orally and either before or after the assignment was made up to the time of trial. Since no consent was ever requested, the existence of alleged arbitrariness or unreasonableness in refusal to give consent cannot be gauged under the *Cohen* standard. As such, whether *Richard* or *Cohen* is the prevailing law in California, appellants properly could not prevail in the unlawful detainer action because of the fact there was a failure to seek consent for the assignment under the facts of this case. (*Boston Properties* v. *Pirelli Tire Corp.* (1982) 134 Cal.App.3d 985, 993-994 [185 Cal.Rptr. 56].) (There is no need to reach the issue, not involved herein, of the ramifications when the record reflects that a request for sublease would be a futile act.)

■ Although judgment was correctly entered into the unlawful detainer action on behalf of respondent, a separate question arises as to the standards that should be utilized relative to a petition for relief against forfeiture under section 1179 of the Code of Civil Procedure.[5]

■ The trial court, with commendable concern and much thought, found the equities to be with appellants and further that respondent Thrifty was not interested in determining whether appellants Dino and Zapanta would be acceptable to the tenants, but merely wanted to obtain the gasoline station for its own operation.[6] However, the evidence also shows, as has

---

[5]Section 1179 of the Code of Civil Procedure reads as follows: "The Court may relieve a tenant against a forfeiture of a lease, and restore him to his former estate, in case of hardship, where application for such relief is made within thirty days after the forfeiture is declared by the judgment of the Court, as provided in Section one thousand one hundred and seventy-four. The application may be made by a tenant or sub-tenant, or mortgagee of the term, or any person interested in the continuance of the term. It must be made upon petition, setting forth the facts upon which the relief is sought, and be verified by the applicant. Notice of the application, with a copy of the petition, must be served on the plaintiff in the judgment, who may appear and contest the application. In no case shall the application be granted except on condition that full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made."

[6]The trial court found that there was no intent to waive on the part of respondent Thrifty accepting the March to April rentals in the light of its desire to obtain the gasoline station for its own use. Thus, contrary to appellants' contention, there was sufficient evidence to show that there was no waiver on the part of respondent as a factual finding. (*Thriftimart, Inc.* v. *ME & TEX* (1981) 123 Cal.App.3d 751, 754 [177 Cal.Rptr. 24].)

been discussed, that there was no request for consent from respondent Thrifty and that the sublease by appellant Batarse to appellants Zapanta and Dino could well have been of an intentional, surreptitious nature.

The trial court refused to grant relief from forfeiture under section 1179 because: ". . . there was no request by Batarse, no request for a sublease. [¶] Had there been a request for a sublease or permission for a sublease from Thrifty, and their refusal had been coached [*sic*] in the melieu [*sic*] that's presented to me, there would be no question that I would rule for Batarse because I don't think there's been any indication in this record of any kind of good faith on the part of Thrifty." The trial judge was correct in that failure to seek consent is an important factor relative to the denial of a petition for relief from forfeiture.

Such should not be the end of the inquiry. The manifest purpose of section 1179 of the Code of Civil Procedure is to provide for relief where a hardship would be created by reason of forfeiture. The mere fact that a hardship exists will not, automatically, be a basis upon which to set aside the forfeiture since hardship will exist in almost all cases where relief is not granted. (*Olympic Auditorium, Inc.* v. *Superior Court* (1927) 81 Cal.App. 283, 285- 286 [253 P. 944].) Rather, the test in applying section 1179 relative to forfeitures was set forth in *Hignell* v. *Gebala* (1949) 90 Cal.App.2d 61, 70- 71 [202 P.2d 378], as follows: "Under section 1179, the court in balancing the equities should take into consideration the circumstances of the case, the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the wilful or other character of the breach, and then use its best discretion in determining whether relief will be granted. Its action will not be upset unless there is a clear showing of abuse of discretion."

Thus where a lessee fails to gain consent from a lessor relative to an assignment, such action will not be an absolute bar to relief under section 1179. Rather it is one of many important factors to consider in a weighing process to determine whether it would be manifestly unjust not to grant relief. It should be noted in this regard that in the *Boston Properties* case, where there was also a failure to seek consent for an assignment, the court stated: "We note only that section 1179 of the Code of Civil Procedure provides the only method of seeking relief from the harshness of a forfeitures such as is here involved." (*Boston Properties* v. *Pirelli Tire Corp.*, *supra*, 134 Cal.App.3d 985, 995.)

Although the *Boston Properties* court refused to apply section 1179 because no such motion was made in the trial court, the fact that the opinion mentions the applicability of section 1179 is authority for the proposition

that failure to seek consent is not an absolute bar to setting aside the forfeiture.

 Therefore, a court in the circumstances herein should engage in a weighing process for a determination as to whether denying relief would be manifestly unjust. Such weighing process is for the trial court and should never be second-guessed except where there is an abuse of discretion. Examples of considerations to be examined in this weighing process include: the nature and character of the breach; the hardship, if any, to the lessee from the forfeiture; the hardship, if any, to the lessor from relieving the lessee from the forfeiture; the reasons why consent for assignment was not sought; the knowledge (or whether there should have been knowledge) on the part of the sublessee that consent for the sublease was not requested; the good faith or lack of it on the part of any party, whether lessor, lessee or sublessee; the extent of bad faith, if any, on the part of any party, whether lessor, lessee or sublessee; the degree of arbitrariness or unreasonableness on the part of the lessors, if such exists, in not honoring the assignment; and any other similar factors relevant to the issues to be resolved.

The matter is remanded back to the trial court for further proceedings consistent with this opinion.

Lillie, P. J., and Johnson, J., concurred.