Filed 12/2/15  Lion 2020 7th Street v. Zepeda CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LION 2020 7th STREET, LLC, | B258424 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC544259) |
| v. | |
| SALVADOR ZEPEDA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gregory W. Alarcon, Judge.  Affirmed.

Law Offices of Lottie Cohen and Lottie Cohen for Defendants and Appellants.

Hollenbeck & Cardoso and Tania Cardoso for Plaintiff and Respondent.

_____

Salvador Zepeda and Agustin Zepeda appeal from both the unlawful detainer judgment in favor of the lessor of the building where they operated their restaurant and the trial court's order denying their motion for relief from forfeiture of the lease on the ground of undue hardship. Because the appellate record does not include a reporter's transcript of the unlawful detainer trial, we presume that the findings in the trial court's statement of decision and order denying relief from forfeiture were correct. We affirm both rulings.

## FACTS AND PROCEDURAL HISTORY

In April 2002, Salvador Zepeda entered a four-year written lease of a building on East 7th Street in Los Angeles where he operated his restaurant and dance/banquet hall known as the Chavas Café. (We will refer to Salvador and Agustin Zepeda by their first names, or collectively as appellants.) The lease required Salvador to: (1) provide copies of all necessary business licenses and operation permits; (2) keep in place a liability insurance policy with coverage limits of $2 million per occurrence that named the lessor as an additional insured; (3) pay the cost of any insurance premium increases; and (4) cover his proportionate share of any property tax increases.

In 2005, the lessor and Salvador signed an addendum extending the lease until 2012, along with scheduled increases in the monthly rent. The addendum also provided an option to extend the lease another five years. Although Salvador was the sole lessee, the 2005 addendum stated that "these options" were also extended to Salvador's son, Agustin. Both Salvador and Agustin signed the 2005 addendum. Another undated addendum signed by Salvador and Agustin describes a five-year lease extension option that would run until 2010. The undated addendum refers to the parties as being Salvador and the original lessor. Another addendum dated in July 2011 extended the lease through April 2017, along with scheduled rent increases. That addendum referred to both Salvador and Agustin as lessees and was signed by each of them.

The original lessor sold the property to Lion 2020 7th Street, LLC in December 2013. On December 31, 2013, Lion sent four letters to Salvador demanding that, pursuant to the lease, he: (1) provide copies of all required business licenses and permits;

2

(2) provide a copy of a liability insurance policy with limits of $2 million per occurrence that named Lion as an additional insured; and (3) pay a property tax increase of more than $19,000 that resulted from the sale of the property. On March 18, 2014, Agustin gave Lion a copy of an insurance policy with coverage limits of $1 million per occurrence, but made no further attempts to comply with Lion's demands at that time.

On March 27, 2014, Lion gave 10- and 30-day notices to comply with the lease provisions or quit the premises. The notices were served on Salvador but stated that they applied to all others in possession. The 10-day notice was based on the failure to provide copies of both the requisite business licenses and permits as well as a copy of an insurance policy that named Lion as an additional insured in the amount of $2 million per occurrence. The 30-day notice was based on the failure to pay the property tax increase of $19,000 or a liability insurance premium increase of more than $6,100.

On April 17, 2014, Agustin provided copies of all required permits and licenses except one: a City of Los Angeles tax registration certificate for retail sales. Instead, Agustin provided only a copy of a tax registration certificate for "music machines." Appellants never paid the property tax or insurance premium increases. On April 30, 2014, Lion brought an unlawful detainer action against Salvador only.

Agustin was the lone defense witness at the two-day bench trial in June 2014. One of the primary issues raised both at trial and on appeal was whether Agustin was in fact Salvador's cotenant. If so, as appellants contend, then the notices to quit and the complaint were both defective because they did not name and were not served on Agustin. As a result, any judgment for Lion would have no effect on Agustin's right to stay on the property.

Because appellants failed to designate the reporter's transcript of the trial, we are left with only the trial court's statement of decision and concomitant findings to describe the trial testimony. The lease required the landlord's written consent before Salvador could assign any portion of his interest to another person and Agustin "testified that he had not signed an addendum adding him to the lease as a formal tenant."

3

According to the statement of decision, a witness for Lion testified that Salvador received both notices to quit. Agustin admitted seeing the 30-day notice, but denied seeing the 10-day notice. Agustin testified that after reading Lion's demand letters he consulted a lawyer and an accountant. He claimed that he did not review the lease terms dealing with liability insurance or licensing requirements because he believed the property tax and insurance premium demands were more important. Agustin also testified that he did not obtain a liability insurance policy in the correct amount and form until May 28, 2014.

The trial court found that the 30-day notice to quit was defective because it was premature and because Lion's estimate of the property tax owed "far exceeded" a reasonable estimate. However, the trial court found for Lion on the 10-day notice to quit based on the failure to provide copies of all required business operation permits and the failure to have had in place the proper liability coverage. The trial court awarded Lion holdover damages of nearly $14,000 and attorney fees and costs of nearly $3,000.

As for the status of Agustin's possessory interest, if any, in the leased premises, the trial court found that he "had not signed any specific addendum specifically adding himself to the lease as a formal tenant." Code of Civil Procedure section 1164 states that only tenants and subtenants who actually occupy the premises need be named in an unlawful detainer complaint.[1] It also provides that anyone who "enter[s] the premises under the tenant" after the action starts is bound by the judgment as if they had been made a party. Relying on this provision, the trial court found that Agustin's absence from the complaint was not fatal to the unlawful detainer claim and that he was bound by the judgment.

The trial court then granted a motion by Lion to add Agustin as a defendant, stating that the amendment was "not at material variance with the complaint" and did not mislead Agustin or prejudice his ability to defend the action. The trial court found that Agustin "had every right and opportunity to be heard by the court, was heard by the

---

[1]     All further section references are to the Code of Civil Procedure.

4

court, and has been added as a Defendant." As a result, Agustin would be "treated as a co-lessee." Although the statement of decision said that judgment would be entered against both Salvador and Agustin, the judgment itself identified only Salvador and all occupants of the premises.

Before judgment was entered appellants filed a motion asking for relief from their lease forfeiture on the ground that the judgment would create undue hardship to themselves, their employees, and customers who had rented the banquet hall for upcoming special occasions. (§ 1179.) Agustin's supporting declaration claimed that the family-run business stood to lose capital investments over the years that exceeded $500,000. In addition, they would lose their clientele and good will that they had built up since the restaurant began operating in 1979. Agustin also listed numerous deposits taken to reserve the banquet hall from July through December 2014. In addition to losing the deposits, those events would be disrupted, he said. Based on the restaurant's past performance, Agustin estimated lost income of $640,000 due to the early termination of the lease.

Agustin said that insurance had always been in effect, albeit in the amount of $1 million per occurrence and $2 million in the aggregate, and that he had simply misunderstood the lease requirement of a policy with limits of $2 million per occurrence. A policy in the correct amount was obtained in May 2014, which was "retroactive." He also said that the Los Angeles city tax registration statement for "music machines" was meant to include retail sales. Agustin said he had tendered the monthly rent to Lion's counsel for May through July 2014 and that he would comply with court-imposed conditions for forfeiture relief, including the property tax increases.

The trial court denied the forfeiture relief motion at the same time it issued its final statement of decision. The trial court found that relief based on hardship to others was improper because separate petitions had not been filed by those supposedly harmed. As for appellants, the trial court found that the petition did not show extreme or convincing hardship because appellants could move to a new location. Finally, the trial court found that appellants' failure to comply with Lion's lease performance demands appeared

5

willful in light of Agustin's testimony that he chose to ignore the 10-day notice to quit and instead continued to book banquet hall reservations and take deposits even after the initial statement of decision was issued. Weighing the equities, the trial court found that appellants effectively brought about their own difficulties.

On August 25, 2014, appellants filed a notice of appeal from the judgment, and the next day filed a petition for writ of mandate with this court, along with a request to stay enforcement of the judgment (case No. B258418). On August 28, 2014, we issued a temporary stay and ordered Lion to respond. We denied the writ petition on October 2, 2014. On October 17, 2014, appellants filed with this court a motion to stay the judgment pending appeal. Five days later the Los Angeles County Sheriff's Department executed a lockout of the premises. On November 25, 2014, we decided to treat the stay motion as a writ of supersedeas and issued a stay of execution. We denied that writ on December 16, 2014, after Lion informed us that appellants were no longer in possession of the premises.

## DISCUSSION

### 1. The Incomplete Appellate Record Compels Affirmance of the Judgment

#### A. The record supports a finding that Agustin was not a cotenant.

If the appellate record does not include a reporter's transcript, and if no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. We therefore presume that the unreported trial testimony would show that no error occurred. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) As a result, an appellant who fails to provide a reporter's transcript cannot challenge a judgment based on the sufficiency of the evidence. (*Ibid.*)

Appellants contend this rule does not apply here because the 2011 lease addendum that purports to identify both Agustin and Salvador as lessees conclusively shows that Agustin was a cotenant. This contention overlooks the statement of decision, where the trial court said that, after reviewing the undated option to extend the lease signed by both Agustin and Salvador, Agustin testified that "he had not signed an addendum adding him to the lease as a formal tenant." One representative of Lion testified that it was not clear

6

in what capacity Agustin had signed either document.  Another testified that Agustin acted as Salvador's interpreter and that Agustin said his father was the decision maker.  Based on this, the trial court found that Agustin "had not signed any specific addendum specifically adding himself to the lease as a formal tenant."

Based on Agustin's testimony that he never signed an addendum adding him as a cotenant, the trial court might well have found that the 2011 addendum did not actually approve Agustin as a cotenant and was simply recognition that Agustin was involved in the business and took part in any negotiations as Salvador's interpreter.  We must presume that the trial court did so and therefore see no error appearing on the face of the record.  (*Estate of Fain, supra,* 75 Cal.App.4th at p. 994.)  As a result, there was no need to serve Agustin with the notices to quit or name him in the complaint.  (§ 1164 [only tenants and subtenants need be served].)

**B.      Agustin waived any objections to being added as a party.**

Appellants contend the trial court erred by amending the complaint to add Agustin as a defendant after the trial ended.  Lion contends the trial court properly exercised its discretion to do so under section 473, which permits amendments that add new parties at any time before judgment is entered.  Appellants counter that amendments adding new defendants have been allowed only to correct technical pleading defects or misnomers.  We need not resolve that issue, however.  Instead, we turn once more to the statement of decision, where the trial court said Agustin "desired to make himself a party to the action."  Because the record does not include the reporter's transcript from the trial or the hearing on Lion's motion to amend, we presume that the trial court found Agustin asked to be added as a party and therefore waived any objections to the court doing so.  (See *Cochran v. Brown* (1927) 84 Cal.App. 743, 748 [finding waiver of irregularity in adding a party defendant].)

We alternately hold that even if the trial court erred by adding Agustin as a defendant, that error was harmless because judgment was not entered against Agustin.  (*Moon v. Marker* (1938) 26 Cal.App.2d 33, 38-39.)

7

### C. The judgment against Salvador also binds Agustin.

The trial court found that its judgment would also bind Agustin pursuant to section 1164, which provides: "All persons who enter the premises under the tenant, after the commencement of the [unlawful detainer] suit, shall be bound by the judgment, the same as if he or they had been made party to the action." Appellants contend the trial court erred because this section applies to only tenants and subtenants.

Appellants base this contention on the first sentence of section 1164, which states that "[n]o person other than the tenant of the premises and subtenant, if there be one, in the actual occupation of the premises when the complaint is filed, need be made parties defendant in the proceeding . . . ." However, the last sentence of this statute also provides that any unlawful detainer judgment is binding on all those who enter the premises under the tenant after the action is brought as if they had been made parties to the action. Therefore, the statute provides that although tenants and subtenants must be named as defendants to an unlawful detainer action, nonparties who enter the premises after the action is brought will be bound by the judgment.

At bottom, appellants' contention rests on their mistaken belief that Agustin was a cotenant. As discussed above, the limited record on appeal supports the trial court's finding that he was not a cotenant. Appellants do not address whether Agustin entered the premises under Salvador after the action was brought. We therefore deem that issue waived. (*Luckett v. Keylee* (2007) 147 Cal.App.4th 919, 927, fn. 11.)

Alternatively, given the silent record on this matter, we presume that the reporter's transcript would show that Agustin, who had no legal possessory interest in the premises, entered at his father's request after the unlawful detainer action commenced in order to protect his father's possessory interest and is therefore bound by the judgment.

### 2. Judgment Was Proper Based Solely on the 10-day Notice to Quit

Section 1161.1 provides that a notice to cure unpaid rent or quit may state that the amount specified as owing is an estimate. (§ 1161.1, subd. (a).) So long as the amount stated was reasonably accurate, the landlord may still prevail in an unlawful detainer action. (*WDT-Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 534 (*WDT-*

*Winchester*).)  If the estimate is within 20 percent of the amount actually owed, there is a rebuttable presumption that the estimate was reasonable.  (§ 1161.1, subd. (e).)  If the estimate was not reasonable, however, then the landlord cannot prevail.  (*WDT-Winchester, supra,* at p. 534.)

Relying on *WDT-Winchester, supra,* 27 Cal.App.4th 516, appellants contend they were entitled to judgment on the 10-day notice to quit because the trial court found that the 30-day notice to quit was defective for having overestimated the amount of property taxes owed.  This contention rests on a misreading of *WDT-Winchester*.  In that case, the lessor served two notices to cure or quit.  The first specified the amounts owed for unpaid rent and property taxes, but did not state that those were estimates.  The second notice did state that the amounts claimed were estimates.  In both cases, the property tax figures were significantly higher than the actual amount owed.  (*Id.* at pp. 523-524.)  In reversing a judgment for the lessor, the *WDT-Winchester* court noted that the lessor argued on appeal that the first notice, which did not purport to supply an estimate, was the operative one, and that as a result, section 1161.1 did not apply.  The Court of Appeal refused to consider that issue because it had not been raised below.  (*Id.* at pp. 526-527.)

Appellants extrapolate from this that if one notice to cure a default or quit is defective, then judgment must be entered for the defendant even if another notice was proper.  However, an appellate decision is authority for only those issues actually decided.  (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 962.)  Therefore appellants' reliance on *WDT-Winchester* is misplaced.

Regardless, section 1161.1 applies only to notices to cure defaults for unpaid rent or other amounts owed.  (§ 1161.1, subd. (a) [stating it is applicable to unlawful detainer actions for unpaid rent brought under § 1161, subd. 2].)  Lion's 10-day notice sought unlawful detainer under section 1161, subdivision 3 for defaults in conditions or covenants other than the payment of rent.  Therefore, although section 1161.1 governed Lion's 30-day notice based on estimates of amounts owed for property taxes and insurance premiums, it did not apply to the separate 10-day notice based on the failure to fulfill the lease covenants of supplying proof of the correct insurance and of having the

necessary business licenses and permits. Lion's complaint was based on both notices to quit, and we view each as analogous to separate causes of action. This case is therefore unlike *WDT-Winchester, supra,* 27 Cal.App.4th 516, where the lessor's notices to cure were based solely on claims for unpaid rent, property taxes, and other charges. We therefore conclude that the judgment for Lion was proper based on the 10-day notice to quit.

**3.     The Trial Court Did Not Err by Denying Appellants' Motion for Relief From Forfeiture of the Lease**

After the trial court issued its statement of decision, appellants moved for relief from the forfeiture of Salvador's lease under section 1179. Under that section, application for such relief can be made by a tenant, subtenant, or any interested person. A ruling on such a motion lies so largely in the discretion of the trial court that it would require a very clear showing of an abuse of discretion to justify a reversal of an order granting or denying the motion. (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1064.)

The mere fact that a hardship exists is not enough to warrant granting the motion because a hardship will exist in almost all unlawful detainer actions. (*Thrifty Oil Co. v Batarse* (1985) 174 Cal.App.3d 770, 777.) In balancing the equities, the trial court should consider the circumstances of the case, the hardships to both lessor and lessee from either granting or denying the motion, and whether the breach of lease was willful. (*Ibid.*)

The trial court's written order denying the motion for relief from forfeiture found that appellants could not rely on hardships to others because the others – their employees and customers – had not filed separate applications for relief. The hardship to appellants was not sufficiently extreme, the trial court found, because a Lion representative testified he offered to help appellants relocate but they refused and took no steps to do so. According to the trial court, "loss of possession of the premises does not equate to loss of the business."

10

The trial court also noted that appellants continued to book banquet hall reservations and take deposits even after the statement of decision was issued, showing that they had contributed to their own hardships. The trial court found that even after appellants had been counseled by a lawyer and an accountant they ignored their lease obligations. The trial court pointed to testimony by Agustin that he admitted ignoring the 10-day notice to quit, although with an explanation, making the lack of compliance willful.

The trial court concluded that, by failing to obtain the proper insurance until after the action was filed, appellants exposed Lion to a risk of potential liability. Granting relief from forfeiture and reinstating Salvador until 2017 would prejudice Lion, which had properly made its formal demands for compliance, waited for compliance, and brought and litigated the unlawful detainer action, the trial court found. The trial court therefore found that the equities weighed in Lion's favor and denied the motion.

Appellants raise three challenges to the trial court's ruling: (1) a separate application by other affected parties was not required; (2) the trial court should not have relied on findings that appellants contributed to their own problems; and (3) the trial court's findings and interpretation of the evidence are unsupported.

Accepting for the sake of discussion that the first contention is correct, we see little effect on our analysis because the essential claim of hardship was the effect on the business and, by extension, the Zepeda family.[2] We disagree with the second for two reasons. First, denial of relief from a lease forfeiture may be based on the existence of hardships that are self-imposed. (*Cambridge v. Webb* (1952) 109 Cal.App.2d Supp. 936, 938.) Second, the evidence is also relevant to the extent it shows a lack of good faith. (*Thrifty Oil Co. v. Batarse, supra,* 174 Cal.App.3d at p. 778.)

---

[2] In finding that a separate application from injured third parties was required, the trial court relied on *Artesia Medical Development Co. v. Regency Associates, Ltd.* (1989) 214 Cal.App.3d 957, 964-965. As appellants point out, the *Artesia* court merely recited section 1179 for the proposition that applications for relief may be made by affected persons other than a displaced tenant.

Most important, however, is the third contention, which asks us to examine (and essentially reweigh) the evidence at trial, yet does so in the absence of a reporter's transcript.  As we read the trial court's order, it depended heavily on its own view of the evidence.  Without the reporter's transcript, we must presume that the unreported proceedings support the trial court's factual findings.  While we share appellants' concerns and sympathize with their loss of the premises, the rules of appellate review compel us to affirm the trial court's order.[3]

## DISPOSITION

The unlawful detainer judgment against Salvador Zepeda, and the order denying appellants' motion for relief from forfeiture of the lease, are affirmed.  Respondent shall recover its appellate costs.

GRIMES, J.

I CONCUR:

FLIER, J.

---

[3] Because we affirm on this basis, we need not reach Lion's contention that our denial of appellants' petition for writ of mandate collaterally estopped appellants from raising the issue again on appeal.

12

## *Lion 2020 7th Street v. Zepeda – B258424*

RUBIN, J. – Concurring and dissenting.

I concur in the majority's decision to the extent it affirms the unlawful detainer judgment for respondent Lion 2020 7th Street, but dissent from that part of the decision that affirms the order denying appellants' motion for relief from forfeiture of the lease.

I acknowledge the trial court's broad discretion in granting or denying motions for relief from lease forfeiture under Code of Civil Procedure section 1179. I also agree with the majority that, regardless of whether separate petitions were required by all those who might suffer hardship from the unlawful detainer judgment, the true focus here is on the hardship to the Zepeda Family, not to its customers. I believe that the hardships the family will suffer, seen in light of undisputed circumstances, mandate relief from the lease forfeiture.

Agustin Zepeda's declaration in support of the forfeiture relief motion showed that Chava's Café had been in operation since 1979. That is 35 years. It was a family-run business that served as the sole source of income for nine family members and their children, the loss of which left them unable to make the monthly mortgage payments on their homes or otherwise provide for their families. The Zepedas had made more than $500,000 in capital improvements to the premises, all of which will be forfeited. They were unable to relocate on such short notice.

As for their lease defaults, it is important to note that the Zepedas never defaulted in their rent and continued to tender rent payments while the unlawful detainer action was pending. The purported default for non-payment of property tax increases was rejected by the trial court as unsupported by the evidence. Instead, the Zepedas' lease was terminated because they failed to maintain property insurance in the correct amount and because they could not show that they had obtained a proper business license from the City of Los Angeles.

Agustin explained that liability insurance had always been in place, with aggregate coverage limits of $2 million instead of the $2 million per occurrence limits required by the lease. This was due to his misunderstanding of what the terms "aggregate" and "per occurrence" meant. Misunderstanding is the stuff of which relief from forfeiture is made. And Agustin obtained a policy in the correct amount as soon as he learned of his error.

As for the supposedly unpaid business license fee, the judgment was based on a City of Los Angeles business license certificate that listed "Music Machines" as the described business, leading the trial court to conclude that the license did not cover the full spectrum of the café's business operations. However, as Agustin explained and as the documents show, this was not the case. The account number on the "Music Machines" business license is 215698-0001-1. The city's license renewal form for 2014 lists as applicable under that account number a retail sales tax basis of more than $230,000, with a tax basis of $2 for amusement machines and $1 for music machines, for a total license fee of $362.42. Accompanying these documents is a check from Chava's Café to the City of Los Angeles in that sum payable for that account number. In short, the Zepedas in fact had the proper business license, and the unlawful detainer judgment was based solely on a mix-up over the amount of property insurance required by the lease.

The trial court found that the absence of the proper insurance exposed respondent to potential liability. I acknowledge that theoretical possibility and the importance of insurance to the respondent, but the record does not show that any claims against the restaurant were made before the error was corrected, much less any that exceeded the incorrect coverage amount that had previously been in place. As for Agustin's supposed bad faith in ignoring the 10-day notice to quit, there was no bad faith: Agustin was confronted with a claim that he owed $19,000 in readjusted property taxes. He dealt with that before other matters by asking respondent for proof of its property tax increase claim. Lack of bad faith was conclusively shown by the trial court's finding that respondent had overstated the amount of the property tax increase, and that its claim was premature.

2

I acknowledge that this is an abuse of discretion case.  I suggest that abuse of discretion is a standard that often defies articulation.  Appellate courts often use the familiar "arbitrary, capricious or whimsical."  I do not suggest by my dissent that the trial court acted either capriciously or out of whimsy.  Nor do I consider the ruling arbitrary in the sense that word is used to describe an act that is "done without concern for what is fair or right."  (Merriam-Webster's Online Dictionary (2015) <http://www.merriam-webster.com/dictionary/arbitrary> [as of Dec. 2, 2015].)  But appellate courts often hide behind the abuse of discretion standard to avoid addressing issues where deference to the trial court is questionable.  This, I believe, is one of those cases.

Justice Howard Weiner wrote years ago that the abuse of discretion standard should be applied in terms of the proper roles of the trial and appellate processes in our jurisprudence:

"Focusing instead on the concept of 'discretion,' that term in one sense refers generally to the power to decide.  But every court -- both trial and appellate -- has 'discretion' in that sense.  Whether the source of the power to decide is constitutional or statutory, the essence of the judicial function is decisionmaking.  'Discretion' in the sense of the 'abuse of discretion' standard refers instead to the relationship between the trial and appellate decisionmaking processes and, more particularly, to the amount of deference which appellate courts accord to trial court determinations.  Discretion in this sense -- that is, trial court discretion -- is not a sacrosanct concept.  Harsh as it may sound, the nature of the relationship between superior and inferior courts dictates that trial courts have discretion only to the extent appellate courts perceive a reason to defer.  The breadth of trial court discretion is a function of the degree to which appellate courts exercise deference." (*Hurtado v. Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1022, disapproved on another point in *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, fn. 4.)  Justice Weiner suggests that the two areas where the appellate court should allow the greatest deference are situations in which factual determinations are involved and in trial management.  (*Id.*)

We have neither here. To be sure there were factual determinations involved in the underlying trial but the facts related to the motion for relief from forfeiture were undisputed. Less deference should be afforded the trial court.

Even though the law abhors a forfeiture (Civ. Code, §§ 3275, 3369), not one reported appellate case has reversed the denial of a motion for relief from forfeiture under Code of Civil Procedure section 1179. Many of those cases deal with familiar facts such as a tenant refusing to pay rent for months in an attempt to force a landlord to make repairs when no obligation existed. (E.g. *Cambridge v. Webb* (1952) 109 Cal.App.2d Supp. 936, 938.) This is not that case. This case involves a venerable family owned business 35 years in operation, a family who had invested some $500,000 in capital improvements, a landlord found to have overreached when it demanded $19,000 in additional property tax reimbursements, and minor breaches of no practical consequence to the landlord. The hardship is obvious.

On the other hand, I see virtually no hardship to respondent by relieving the Zepedas of their lease forfeiture upon satisfaction of conditions that would remove any defaults. Nowhere does the landlord explain how it has been actually harmed by anything the Zepedas did or did not do. On the contrary the only apparent harm to the landlord by granting the relief from forfeiture would be the lost opportunity to deprive the Zepedas of favorable lease terms agreed upon with the landlord's predecessor, and instead to lease the property to someone else.

Balancing the equities on the two sides compels the conclusion that there was no reasonable basis to deny the relief from forfeiture and, in the parlance of the present standard of review, the trial court abused its discretion in so ruling.


RUBIN, Acting P. J.

4